No. 22,006.

WILLIAM C. RICKEL, as Administrator, etc., *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. CORPORATION—*Acts of Corporate Officer—Electing Not to Come Under Compensation Act—Burden of Proof.* When an officer of a corporation presents to the secretary of state a document in writing in which it is recited that such corporation elects not to come under the provisions of the workmen's compensation act, and the secretary of state accepts and files such document as a genuine and authorized instrument, the public has a right to act upon the presumption that the execution and presentation of the document were authorized by the corporation, and if not so authorized the burden is on the corporation to prove that fact.

2. SAME—*Dangerous Place to Work—Assumption of Risk—Instructions.* Where a jury specifically finds that the situation of a workman who was injured was not obviously dangerous, an inaccurate instruction touching the workman's assumption of the risk of obvious dangers is not reversible error.

3. SAME — *Negligence — Moving Heavy Machinery — Tools Required — Province of Jury—Matters of Common Knowledge.* A jury may draw upon their own information, without proof, touching simple matters of common knowledge and experience, and they do not need to be told that the use of a jack (or other equally efficient device) is necessary to raise the wheels of a heavily loaded vehicle from a groove or rut into which the wheels had slipped; and when all the facts touching such a situation are in evidence the jury may properly find that the

attempt to drag the loaded vehicle out of the groove without the use of jacks was an act of negligence; and a finding that such negligence caused the injury and death of a workman will not be disturbed.

Appeal from Wyandotte district court, division No. 1; Edward L. Fischer, judge. Opinion filed March 8, 1919. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott;* all of Topeka, *James W. Orr,* of Atchison, and *C. Angevine,* of Kansas City, for the appellant.

*W. C. Rickel, J. O. Emerson,* and *David J. Smith,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an action for damages for injuries which caused the death of Antonio Fuentez, a Mexican workman, while he was employed in the defendant's workshop.

While the deceased and three other workmen were engaged in moving a heavy boiler on a wheeled "trailer" which was hauled by a small motor truck, one or more of the wheels of the trailer dropped into a groove and stopped. The floor where the men were at work contained a railway track which had been planked, and this groove was beside the rail to permit the revolution of the flanges on car wheels. Antonio placed a piece of wood in front of the trailer wheel so that it might be hauled up out of the groove. The foreman, who was operating the motor truck, called on Antonio to steady the boiler, and then started his motor; but instead of raising the trailer wheel out of the groove, the trailer was swung around and the boiler and trailer were overturned, and Antonio was fatally crushed between the falling boiler and a neighboring telegraph pole.

Plaintiff's petition alleged that the defendant had filed with the secretary of state a written election not to come under the workmen's compensation act. The petition charged negligence in various ways: (1) in permitting a groove in the floor which rendered dangerous the operation of the trailer thereon; (2) in attempting to raise the loaded trailer without the use of levers or jacks; (3) in providing an insufficient number of workmen for the task, thus increasing the danger;

Rickel v. Railway Co.

(4) in attempting to move the boiler with a truck and trailer so light and small in comparison with the size of the boiler as to render the work unnecessarily dangerous; and (5) in not warning the deceased of the danger of the boiler rolling on him. Deceased was a mere helper and inexperienced, and did not know or appreciate his danger, and had no control of the operation or of the method of performing the work.

Defendant's answer was a general denial, and that the death of the workman was occasioned by his own negligence; that his fatal injuries were the result of risks involved in the employment; and that these had been assumed by the deceased.

The jury returned a general verdict for plaintiff, and answered certain special questions:

"7. Was the crack or opening in the platform or floor into which the wheels of the truck dropped, an opening that was left along the side of the rail of the railroad track for the flanges of car wheels? Answer: Yes. . . .

"9. If you find that the defendant was guilty of any negligence which caused or directly contributed to the death of Antonio Fuentez, then state fully of what that negligence consisted? Answer: In causing or permitting an opening in its platform; in attempting to raise the wheels of trailer out of crack without the use of jacks; in not providing a sufficient number of competent workmen; in attempting to move the boiler without the proper means of conveyance; in not warning deceased of the danger of standing close to boiler. . . .

"13. Was the position taken by Antonio Fuentez beside the car, obviously dangerous? Answer: No."

The defendant assigns error in the admission of evidence, and in the instructions, and insists that there was no evidence to prove negligence on the part of defendant.

To prove that defendant had elected not to come under the workmen's compensation act, the plaintiff introduced two documents certified by the secretary of state as part of his office files, one of which recited that the Atchison, Topeka and Santa Fe Railway Company, etc., "hereby elects not to accept any of the provisions of House bill No. 858," (the compensation act of 1911 as amended in 1913), etc. (Signed) "The Atchison, Topeka & Santa Fe Railway Company, by E. L. Copeland, Secretary and Treasurer."

The second was to the same effect, but of a date subsequent to the amendments of 1917 to the compensation act, and signed in the same manner. Defendant contends that these docu-

ments were insufficient to prove that the railway corporation had elected not to come under the provisions of the act, since a corporation's secretary and treasurer is not an officer clothed with such managerial and executive powers as to authorize him to speak for the corporation on a subject unrelated to his ordinary duties.

This contention is not incorrect as a principle of abstract law, but here the defendant had permitted this officer to make and file with the secretary of state these documents of election, one in 1913 and the other in 1917. That the documents were genuine, and that they were sufficient in form and text to serve the purpose of those who might need to examine and act upon them, was determined by the secretary of state when he accepted them from the corporation's officer and filed them in his office. Moreover, the election was pleaded in plaintiff's petition, and defendant's unverified general denial would not fairly raise the question of the secretary-treasurer's want of power. If plaintiff's pleading on this matter, based as it was in reliance upon what the files of the secretary of state disclosed, did not correctly state defendant's attitude under the compensation act, the true state of the facts was peculiarly within the knowledge of the defendant and not readily accessible to plaintiff, and it was the duty of defendant to plead the facts. Moreover, defendant's answer contained allegations of assumption of risk, etc., which would be altogether out of place if defendant was operating under the compensation act. Under all these considerations the court holds that no error occurred in permitting this evidence. (3 Wigmore on Evidence, §§ 2158, 2159.)

Error is also urged against one of the court's instructions. Because defendant, by objecting to the competency of the evidence discussed above, had raised a question whether the railway company was conducting its workshop within or without the regulations of the compensation act, the instructions were cluttered with a dissertation of law touching the company's liability if it were inside the act and the extent of its liability if it were not within the act, and other related and pertinent matters had likewise to be covered by the instructions. The particular criticism to which defendant directs attention is part of a statement in a complicated instruction which seems to read

that assumption of risk was not a defense to an employer who was not within the act. But this same instruction cures this defect, if it is a defect, where it continues:

"However, . . . [if] . . . it elected not to accept the terms of the workmen's compensation statute, this defense will be valid if it is proven by a preponderance of the evidence that the injury and death of the deceased resulted from the usual and ordinary risks of his employment; and under such circumstances, it must be held that the deceased assumed all the usual and ordinary risks of his employment and also assumed all the risks of his employment of which he had knowledge and the danger of which he appreciated. He also assumed the risk of all dangers the existence of which and the danger from which he knew and appreciated or which he could have known and appreciated by the exercise of ordinary care and prudence on his part."

In view of this latter part of the criticised instruction, as well as the jury's thirteenth finding, which shows that the sort of ordinary risk which a workman assumes was not in the case at all, the error complained of was not prejudicial.

Defendant's most serious contention is that there was no evidence to support the verdict nor to support the material findings of the jury. It is perhaps true that since a groove beside the rail was necessary for the flanges of the car wheels (finding 7), he first element of negligence specified by the jury—permitting an opening in the platform (finding 9)—was not negligence at all. Passing for the present the matter of attempting to raise the loaded trailer without levers or jacks, it may also be conceded that there is no evidence that a greater number of workmen would have lessened the probability of the accident or prevented it. Neither can it be said that the truck and trailer were not proper means for moving the boiler. Evidence to support that element of negligence is wanting. Nor is there evidence that there was any negligence in failing to warn the deceased.

We come then to the remaining ground of negligence—the attempt to raise the wheels and drag the trailer out of the crack (groove) without the use of jacks. This was a ground of negligence charged in the petition, and, of course, this was the real cause of the accident. There was no formal evidence that jacks ought to have been used or that the proper and workmanlike way to have raised the loaded trailer was by using jacks. How then did the jury come to find that the failure to

use jacks was negligence? Simply because they drew on their own knowledge of a common work-a-day fact which every intelligent man of common education and experience does know. This boiler weighed 3,500 pounds. It was loaded on a trailer, one or more of whose wheels had slipped into the groove by the side of a steel rail. Would it have served any purpose—would it have conveyed any information to the jury that they did not know—to have gone through the formality of calling a workman to testify that the proper way to raise that loaded trailer was by the use of jacks? This court thinks not. Matters of fact of so simple a character are within the common knowledge of jurymen of average intelligence, and the use of a jack to raise the wheel of a heavily loaded vehicle out of a rut or groove is so obviously the proper way to raise it, and so commonly the way it is done, that the jury did not need to be told of it to justify its finding to that effect. There is a clearly defined though narrow field of elementary facts of mechanics so notoriously known to every intelligent person that no evidence to establish them before a jury is necessary. (*Insurance Office v. Woolen-mill Co.*, 72 Kan. 41, 46, 82 Pac. 513; *Cheek v. Railway Co.*, 89 Kan. 247, 131 Pac. 617; *Cardwell v. Railroad Co.*, 90 Kan. 707, 136 Pac. 244; 16 Cyc. 852; 15 R. C. L. 1056, 1104; 4 Wigmore on Evidence, § 2570. See, also, notes in 31 L. R. A. 489; 37 L. R. A., n. s., 790.)

It has been held that a trial court and jury know, without the introduction of evidence, the purpose of a fender on a street car (*Spiking v. Railway & Power Co.*, 33 Utah, 313, 93 Pac. 838); they likewise know the character, construction and use of an ice-cream freezer (*Brown et al. v. Piper*, 91 U. S. 37); they also know that the use of dynamite in blasting under a city is inherently dangerous (*City of Chicago v. Murdock*, 212 Ill. 9); that vacant buildings are ordinarily more exposed to damage by fire than occupied buildings (*White v. Insurance Co.*, 83 Me, 279); that it is a matter of common knowledge and needs no proof that the breaking of bridles, harness and vehicles is of common occurrence, and that when such a mishap transpires it may frighten a gentle horse and cause it to run away. (*City of Joliet v. Shufeldt*, 144 Ill. 403, 413. See, also, the opinion of Judge Vandeventer and the wealth of pertinent

citations collected by him in *Chicago, M. & St. P. Ry. Co. v. Moore*, 166 Fed. 633.)

The necessity for using jacks to raise the trailer was clearly disclosed by the evidence narrating how Fuentez met his death. A fellow workman and eyewitness testified:

"The trailer was connected with the truck by two cross chains. Mr. Rogers had charge of the truck. The man that was killed was Mr. Rogers' helper. The loading took place inside the boiler shop. . . . When they started out from the boiler shop Fuentez was riding here and Mr. Rogers was driving right on the front. . . . When we got outside against that telegraph pole the trailer seemed to wobble a little bit and the front wheel went down, dropped into the groove between the switch [rail] and the planking, and I hollered 'Whoa.' After that front wheel fell in the groove, Mr. Rogers backed up just a little and then stepped from the motor truck and beckoned to the Mexican, and pointed to two pieces of board that were lying there on the platform and told the Mexican to put them under the wheel, and when the Mexican went down and put these two boards to the wheel. when he got them there, he stood up and then Mr. Rogers said, 'Watch the board, steady the boiler,' and he went back to the trailer and started off. They put the boards right to that front wheel that was in the groove. After they were put there Mr. Fuentez stood right in a line with this telegraph pole. Mr. Fuentez went to steady the boiler Rogers, said 'Watch them boards.' At that time he was right in between the boiler and the post. When Mr. Rogers backed out a little bit, these two chains were slacked. When Mr. Rogers told him to steady the boiler and watch the board, the Mexican had his back to this post facing the boiler. He was steadying the boiler. When Mr. Rogers went back and got on the truck and started out, Fuentez was right in the same place, he never moved. When Rogers started up with the truck expecting to pull it on these two boards that had been put in there, it gave a little jerk, and as it gave a jerk this end, in swinging right around, as it swung around it pulled right around with this chain tight in here, and the boiler and trailer all tumbled over. I mean the rear end of the trailer swung around and when it swung around, the rear right hand wheel of the trailer went into this groove, and then the boiler and the trailer all tumbled over at once, just as quick as that. (Indicating.) Fuentez did n't have any chance to get away because it was done as quick as that."

This evidence makes it clear and plain that the attempt to drag the heavily loaded trailer out of the groove without the use of a simple device like a jack (or some equally effective mechanical device) was negligence. It is so plain that the jury needed not to be told of it, but might draw on their general information to that extent, and manifestly this negligence brought about the death of this workman, and he himself,

obedient and unskilled as he was proved to be, was without fault.

The judgment is affirmed.

JOHNSTON, C. J., and WEST, J., concur in the judgment, but are of opinion that the record contains some evidence to sustain the finding of the jury that the defendant had not provided a sufficient number of workmen to watch the board and steady the boiler, and that there was negligence in failing to warn the deceased of his danger.