No. 22,347.

J. S. ERNST, *Appellee*, v. THE CHICAGO GREAT WESTERN RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Injuries—Use of Defective Tool—Knowledge of Servant—Assumption of Risk.* Where a workman, who was a pipe fitter, called his foreman's attention to a pipe wrench with which he was working, and which was worn and inclined to slip when in use, saying, "This wrench is bad; this wrench is not very good; I have got to have one," such statement does not indicate that the continued use of the wrench would be dangerous; and the foreman's answer, "Go ahead and use it this evening, but maybe I will get you one in the morning," did not indicate an appreciation that the use of the wrench was dangerous, nor a promise to speedily eliminate some impending danger to the workman.

2. SAME—*When Servant Assumes the Risk of Danger.* In an ordinary action for damages by a workman against his employer for injuries sustained in the use of a defective tool, when such action is not governed by workmen's compensation acts and similar modern statutes, the workman assumes the risk of injury in using the tool, if it is a common and familiar one in his vocation, and if he is aware of its defective

condition; and the master is not liable in damages for injury to the workman under such crcumstances.

3. SAME.   Ordinarily, an employer is not liable to his workman for injuries sustained in the use of a defective, common tool with which the workman is perfectly familiar, nor where neither the employer nor employee contemplates any danger to the latter in the continued use of the defective tool.

4. SAME—*Facts Showing Assumption of Risk.*  A workman, who was a pipe fitter by vocation, was making a connection of a steam pipe to a radiator.   The pipe wrench was worn, and frequently slipped and failed to hold its grip on the pipe.   On one occasion when it slipped the workman wrenched his back, and the radiator fell upon and bruised him.   The workman brought an action against his employer for damages, not under the modern statutes relating to workmen's compensation for injuries, but under the general principles of the common law. *Held*, that the tool was a common and simple one in the workman's vocation, and that the rule as to assumption of risk of the ordinary hazards of his calling bars a recovery against his employer.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge.   Opinion filed December 6, 1919.   Reversed.

*A. L. Berger,* of Kansas City, and *Walter H. Jacobs,* of Chicago, Ill., for the appellant.

*J. K. Cubbison,* and *William G. Holt,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an action for damages against a master for injuries sustained by a workman in using a defective tool.

The plaintiff was a pipe fitter in the defendant's workshop, and in the afternoon of November 30, 1917, he was engaged in placing a steam radiator in position and in connecting a steam pipe therewith.   The pipe wrench with which he was making the connection was somewhat worn, and occasionally slipped while being used, and the plaintiff spoke to his foreman about it.   Plaintiff testified—

"Q. Did you say anything to Mr. Isaacs concerning this wrench? A. Yes, sir.

"Q. And what did you say to him?   A.  I said, 'Mr. Isaacs, this wrench is bad; I have got to have one.'   And he says, 'go ahead and use it this

evening, but maybe I will get you one in the morning.' And he walked away from me. . . .

"Q. Did you have the wrench with you when you talked to Isaacs? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. What was it you said to Isaacs? · A. I said, 'Mr. Isaacs, this wrench ain't very good.' He says, 'go ahead and use this, and I may get another one, maybe this evening or in the morning.' And he walked away. That was all he said.

.    .    .    .    .    .    .    .    .    .    .    .    .

"A. He said, 'go ahead and use this wrench; this is all we have.' And that is all they had on the job."

About thirty minutes thereafter the pipe wrench slipped while plaintiff was continuing his work of connecting the steam pipe with the radiator, which caused the plaintiff to wrench his back and the radiator to fall upon him and bruise him.

"I was kneeling down on one knee facing the pipes. Had my weight up against it trying to connect the union. The wrench slipped and radiator turned over. It was about eight inches from the wall, and when the wrench slipped it pitched me up against the radiator and fell back on me."

The alleged accident occurred about 2:30 p. m. Plaintiff continued to work until the closing hour; and as he had to appear next day in court on a charge of manslaughter he did not return until December 3, when he told one of defendant's foremen that he was going on a hunting expedition. Later he reported to the defendant, on December 8, or December 9, at which time he was discharged. The foreman, Isaacs, testified that plaintiff was discharged for overstaying his time and for being drunk. Plaintiff denied this, and the matter of his discharge was taken up with the defendant by certain of plaintiff's associates in a labor union, who investigated the matter. One of these testified:

"He came for us to go there and investigate what for he got discharged and found out, and told him that we could not do anything for him. We told him overloaded. . . . by being 'overloaded' we meant we found him drunk. At that time, we was a member of the same union. We were a committee from the lodge to investigate his discharge."

Another workman testified:

"He [plaintiff] said he was discharged for overstaying his leave of

absence, and for being drunk on the job in the shanty at night. He asked me to investigate his case. It was brought before the lodge, and I was a committeeman. He requested us to investigate his case and have him reinstated. That is, Mr. Portash and myself, as committeemen from Corn Belt Local No. 402 of the Brotherhood of Railway Carmen. We made investigation and reported the next day to him at the air-brake shanty of the Chicago Great Western. I told him we had investigated his case and found that the charges were true and couldn't do nothing further for him. He told us what the charges were, of course. When we told him that we found the charges true, he turned around and picked up a wrench, and said, 'I got hurt with this wrench and am going to take it with me', and put the wrench in his pocket. This was in the air-brake shanty at the C. G. W. shops. I saw him from time to time after that, but before that time he never said that he was hurt. It was after then he claimed he was hurt."

Some months later this action was begun. Issues were joined, and the cause was tried before a jury, which returned a verdict for plaintiff, and judgment was given thereon. The defendant assigns a number of errors, but the critical one is involved in the question whether the master's foreman knew or should have known that the use of the pipe wrench was dangerous and that injury of some sort to the plaintiff would probably arise from the continued use of it.

There was no evidence to prove that the defendant knew or should have known that the use of the tool was dangerous, unless it can be inferred from the statement of the plaintiff to Isaacs, the foreman, about thirty minutes before the accident, when plaintiff said: "Mr. Isaacs, this wrench ain't very good"; or "Mr. Isaacs, this wrench is bad; I have got to have one." It seems to us that neither of these statements gave any intimation that the use of the wrench was dangerous. At most, they meant that the usefulness of the tool was impaired, and the plaintiff could not do effective work with it. This court must accept as true the plaintiff's statement that he was injured, and also his statement as to the manner of its occurrence; but his injury, which happened as he says when the wrench slipped, was merely an incident to the employment, and the case is governed by the familiar, old-fashioned rule of assumption of risk, as this action is not based upon our modern and more humane statutes relating to compensation for injured workmen. (26 Cyc. 1177, et seq.) The plaintiff was a pipe fitter by trade; a pipe wrench was a

simple common tool in his vocation. (*Rickel v. Railway Co.,* 104 Kan. 453, 458, 179 Pac. 550.) Ordinarily, an employer is not liable to his workmen for injuries sustained in the use of a defective common tool with which the workman is perfectly familiar, nor where neither the employer nor employee contemplates any danger to the latter in the continued use of the defective tool. It could not have been anticipated that injury to the workman would flow from the continued use of the wrench—a common tool with which the plaintiff workman was perfectly familiar (26 Cyc. 1209, 1210) ; and the answer and promise of the foreman, "Go ahead and use this, and I may get another one, maybe this evening or in the morning," does not disclose an appreciation of any danger, nor does it bear the construction of a promise to remove or dispel some danger. The principle underlying this sort of cases is well discussed in *Meador v. Lake Shore and Michigan Southern Railway Co.,* 138 Ind. 290, 46 Am. St. Rep., 384, 388, where it is said:

"A common laborer who uses agricultural implements while at work upon a farm or in a garden, or one who is employed in any service not requiring great skill and judgment, and who uses the ordinary tools employed in such work, to which he is accustomed, and in regard to which he has complete knowledge, cannot be said to have a claim against his employer for negligence, if, in using an utensil which he knows to be defective, he is accidentally injured.

"In such case it does not rest with the servant to say that the master has superior knowledge, and has thereby imposed upon him. He fully understood that the spade, the axe, the hoe, or the ladder, the instrument which he used, was not perfect, and if he was thereby injured it was by reason of his own fault and negligence. The fact that he notified the master of the defect, and asked for another implement, and the master promised to furnish it, in such a case, does not render the master responsible if an accident occurs. A rule imposing a liability under such circumstances would be far reaching in its consequences, and would extend the rule of *respondeat superior* to many of the vocations in life for which it was never intended. It is a just and salutary rule, designed for the benefit of employees engaged in work where machinery and materials are used of which they can have little knowledge, and not for those engaged in ordinary labor, which only requires the use of implements with which they are entirely familiar. The plaintiff, in the case at bar, was of the latter class of laborers [a lamp lighter], and the work in which he was engaged was not of the character which would entitle him to the protection of the principles referred to, as applied to the use of complicated machinery. . . . In *Marsh v.*

*Chickering*, 101 N. Y. 396, which grew out of a claim for damages resulting from the slipping of a ladder, a judgment of the lower court for the plaintiff was reversed, notwithstanding it appeared that the plaintiff had notified the employer of the defective condition of the ladder, and the latter had promised to have it repaired. The case is not distinguishable in principle from the one now under review." (pp. 294, 295.)

This case should have been disposed of on demurrer to the evidence, or by a peremptory instruction to the jury.

Reversed.