No. 25,919.

Noah Palmer, *Appellee,* v. The Midland Valley Railroad Company, *Appellant.*

### SYLLABUS BY THE COURT.

Master and Servant—*Federal Employers' Liability Act—Contributory Negligence.* In an action based upon the federal employers' liability act to recover damages for personal injuries sustained in the derailment of a hand car, the proceedings considered, and *held:* (a) The danger confronting plaintiff was not so obvious, imminent and immediately threatening as to make it clearly imprudent for him to continue in the line of his duty. (b) It was not error to overrule defendant's demurrer to the evidence. (c) There was no error in refusing to give the instructions requested by the defendant, nor was there any prejudicial error in the instructions given. (d) Other alleged errors considered and held not to be of substantial merit.

Appeal from Cowley district court; Oliver P. Fuller, judge. Opinion filed May 9, 1925. Affirmed.

*Albert Faulconer, Kirke W. Dale, C. L. Swarts,* all of Arkansas City, *F. S. Jackson,* of Topeka, and *O. E. Swan,* of Muskogee, Okla., for the appellant.

*W. L. Cunningham,* and *D. Arthur Walker,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action, based upon the federal employers' liability act, was one to recover damages for personal injuries sustained by the plaintiff on account of the derailment of a hand car. The plaintiff recovered, and defendant appeals.

The plaintiff was a section foreman for the defendant, having charge of seven miles of the defendant's railroad near the town of Hardy, Okla. In the pursuance of his work he used a motor car and a push car furnished by the defendant. (Plaintiff owned the motor.) Both cars had been out of repair for some time prior to the accident. The evidence showed that the cars needed boxings and brasses for the boxing; that the wheels were out of alignment; that one of the axles was bent; that the worn-out boxes and bent axle tended to cause the wheels to climb the rails and leave the track. Plaintiff notified his superior officer, the roadmaster (Graham), of the condition of the cars, and requested repairs for them. Graham promised to furnish the necessary repairs. Some days before the accident the plaintiff's wife, in his presence, told Graham that if she were in her husband's place she would put the hand car in the tool house and let it stay there until they furnished the repairs. Graham replied, "Well, if he did he would lose his job." He further stated that "if Mr. Palmer (plaintiff) would go ahead and use the motor car he would furnish repairs as soon as he could get them"; that "it was safe to use the car"; that "it was necessary to do so"; and that "he (plaintiff) would have to use it even if he had to walk and push it."

On the day of the accident, about four o'clock in the afternoon, Graham came to the place where the plaintiff and the section men were working near the north or west end of the section; ordered them to "load the car and trailer and to go to the east end and fix up a bad place"; to "get the car on and hurry over there." At this time he (Graham) brought and delivered to the plaintiff the repairs for the car. In accordance with such directions, the hand car and trailer were loaded and started to the east end, the trailer being attached by rope. They had gone about a quarter of a mile, were running at about twelve miles an hour, when the derailment occurred which resulted in plaintiff's injury and the death of another member of the

crew. In the derailment the section men were thrown forward upon the ballast, which consisted of rocks ranging from the size of one's fist to the size of a man's head, both outside and inside the track. The plaintiff, among other things, testified that while the boxing and various parts of the hand car and trailer were worn, he "did not consider it in a dangerous condition, or dangerous to use"; that he "did not believe anyone would get killed or hurt by the use of the car."

Graham, among other things, testified that whatever he told Palmer to do he had to do; that Palmer complained about the car; said it needed some brasses and boxing in line of repairs. He said, "I promised to get them for him." Referring to conversation with Mrs. Palmer, he said, "I told them they would have to go ahead and use the motor car even if they had to get out and push it instead of using the pump car, because it is easier on the men and faster. I wanted them to understand that I wanted them to use it."

The plaintiff sued for $25,000. The jury awarded him $2,500, and answered special questions as follows:

"1. Were the cars in question defective at the time the accident occurred? A. Yes.

"2. If you find the cars were defective, how long had such defects existed? A. Thirty days.

"3. Did the plaintiff have equal opportunities with the defendant to know of any defects in the cars and any dangers incident thereto? A. Yes.

"4. If you find that the cars were defective, were the defects such as to make them unsafe and dangerous to operate? A. Yes.

"5. Did plaintiff report to the defendant that the cars were defective? A. Yes.

"6. If you find that the plaintiff had reported to. the defendant that the cars were defective, when did he do so? A. During July and August.

"7. If you find that the plaintiff had reported to the defendant that the cars were defective, had a reasonable time within which to repair them elapsed before the accident occurred? A. Yes.

"8. If you find that the cars in question were defective and that plaintiff had equal opportunities with the defendant to know of such defects and appreciate the danger incident thereto, please state whether the plaintiff was negligent in continuing to use and operate the same? A. Yes, and defendant also."

The defendant admitted that the cars were defective; that the defects made them unsafe and dangerous to operate. It contends, however, that the plaintiff had equal opportunities to know of the defects and dangers incident to the operation of the cars; that a reasonable time within which to repair had elapsed before the accident had occurred, and that the plaintiff was barred from recovery because negligent in continuing to use the cars; that he assumed the

risk. It argues that a servant assumes the risks arising out of the master's negligence when he knows of such negligence and the risk created thereby; that there is, of course, the exception that, where a defect is not such as to make it dangerous to continue in the service, and there is a report or complaint and a promise to repair, the servant may, in reliance upon such promise, continue in the service for a reasonable length of time for repairs to be made, but if repairs are not made within such reasonable time he again assumes the risk; that, not only did the defects render it dangerous to continue using the cars, as to which defects plaintiff had full knowledge and as to which he made a report and secured a promise to repair, but he negligently continued to use the cars in their defective and dangerous condition, not only during the time reasonably required within which repairs could be made, but after such reasonable time to repair had elapsed.

On the other hand, plaintiff contends that he did not assume the risk; that he complained of the condition of the car; that the defendant promised to repair it; that plaintiff relied upon the promise; that he used the car in obedience to the command or orders of his superior officer, on assurance of its safety; that he may or may not have been guilty of contributory negligence. If he was, under the finding of the jury, that fact was taken into consideration in mitigation of his damages. He argues that he should not be held to have assumed the risk unless it appeared that the danger was both obvious and imminent.

From a multitude of authorities cited by the parties to sustain their respective contentions, we conclude that the case turns on the question whether, under all the circumstances, the danger was so obvious, imminent and immediately threatening as to make it clearly imprudent for the plaintiff to continue in the line of his duty. Imminent danger is such danger as must be instantly met, which cannot be guarded against by calling on others for assistance. It occurs when the peril is manifest—that is, unquestionable—and is such as to constitute, at the time, an emergent danger. (*Coffin v. Blackwell*, 116 Wash, 281.) See, also, *Kessler & Co. v. Southern Ry. Co.*, 255 S. W. 535, 200 Ky. ——, where a distinction was recognized between acts which constitute negligence and acts which amount to confronting imminent and obvious danger.

In *Anderson v. Fielding*, 92 Minn. 42, 46, it was said:

"A servant is not chargeable with the assumption of the risk or with con-

tributory negligence as a matter of law by continuing to use for a reasonable time a machine or appliance which he knows to be unsafe, and appreciates the risk of using it, where he has complained of it, and the master has promised to remedy the defect, unless the appreciated danger is so imminent that a man of ordinary prudence would refuse to longer use it unless it was made safe. A reasonable time, within the meaning of this rule, is any period which does not preclude all reasonable expectations that the promise may be kept." (Citing cases.)

In *Seaboard Air Line v. Horton*, 239 U. S. 595, 60 Law. Ed. 458, the plaintiff, an engineer, was injured through an explosion of a water gauge on his engine. In order to protect him from injury in case of the bursting of the gauge, a thick piece of plain glass, known as a guard glass, should have been in position in slots arranged for the purpose in front of the gauge. When the plaintiff took charge of the engine he noticed that the glass guard was missing, reported it to his superior, and asked him for a new one. The foreman to whom he had applied agreed to procure one, but said that plaintiff in the meantime should run the engine without it. He did so for a time, and until the explosion of the water gauge, causing the injury. It was claimed there, as here, that the plaintiff assumed the risk of injury. It was also argued that the plaintiff was guilty of contributory negligence. This contention, like that in regard to assumed risk, was based upon the ground of the obvious and imminent nature of the danger to the plaintiff arising out of the absence of the guard glass. The court held that reasonable reliance of an employee upon the employer's promise to repair a defect was as good an answer to the charge of contributory negligence as it was to the contention that he assumed the risk, and that, as to both matters, the question was whether it could be said that the danger was so imminent that no ordinary prudent man, under the circumstances, would continue in the employment in reliance upon the promise. It was said that—

"To relieve the employer from responsibility for injuries that may befall the employee while remaining at his work in reliance upon a promise of reparation, there must be something more than knowledge by the employee that danger confronts him or that it is constant. The danger must be imminent—immediately threatening—so as to render it clearly imprudent for him to confront it, even in the line of duty, pending the promise." (p. 599.)

In *A. T. & S. F. Rld. Co. v. Lannigan*, 56 Kan. 109, 115, 42 Pac. 343, it was said:

"The employer is bound to act within a reasonable time after notice. The employee has still a reasonable time after the employer is in default before he is required either to quit the service or assume the risk."

In *Foster v. Railway Co.*, 127 Iowa 84, it was said:

"The waiver does not continue until the employer may by reasonable diligence effect the repair, but is suspended *eo instante* upon making the promise. . . . From that time on the risk is the master's and not that of the servant, as long as the latter may reasonably expect the promise to be performed." (p. 88.)

In *Swain v. Chicago R. I. & P. Ry. Co.*, 187 Iowa 466, it was said:

"It would certainly not tend to strengthen the respect of fair-minded people for the law, if when a master has induced a servant to remain in his employment by promise to repair a defect in an instrument of the servant's labor, and because of his failure to perform such promise the servant is injured, he may say to the injured person: 'True, the tool I required you to use was defective; true, I induced you to continue in my service by promising to repair the defect; true, you did remain in reliance on the promise; and true, I did not make the promised repair, and you suffered injury thereby; but you should not have been so foolish as to place any confidence in my word or to be thereby persuaded to stay in my service. Your injury is, therefore, the fruit of your own folly, and I will make no compensation.'" (p. 490.) (See, also, *Lehigh Valley R. R. Co. v. Skoczyla*, 278 Fed. 378; *Atlantic Corporation v. Harris*, 275 Fed. 721; *Goldhunter Mining & Smelter Co. v. Johnson*, 233 Fed. 849; *Railroad Co. v. Morris*, 76 Kan. 836, 93 Pac. 153; *Railway Co. v. Quinlan*, 77 Kan. 126, 93 Pac. 632; *Ahlstrom v. Kansas Milling Co.*, 85 Kan. 548, 550, 118 Pac. 57; *Anders v. Railway Co.*, 91 Kan. 378, 137 Pac. 966; *Daugherty v. Midland Steel Co.*, 23 Ind. App. 78; *Swift & Co. v. O'Neil*, 187 Ill. 337; *Rothenberger v. Milling Company*, 57 Minn. 461; *Sapp v. Christy Bros.*, 79 Neb. 705; *Highland Boy Gold Min. Co. v. Pouch*, 124 Fed. 148; *Lynn v. Omaha Packing Co.*, 88 Neb. 720.)

In the instant case the plaintiff was justified in believing the repairs would be furnished by the continued and successive promises of the defendant. What transpired showed that he was justified in so believing. The roadmaster recognized the defects, procured the repairs and delivered them, but with the instruction to "hurry over to the east end" and repair the track. No time was given to repair the car. The plaintiff was directed to leave the repairs at the section house. The defendant, by this act, precluded the plaintiff from making the repairs at the time they were delivered, and thereby extended the time during which the plaintiff might continue to use the car without assumption of the risk on account of the car's known defects.

The circumstances do not, in our opinion, justify the conclusion that the danger encountered by the plaintiff was so obvious, imminent—immediately threatening—that no ordinarily prudent man would have undertaken to carry out the order given him. To so conclude would, in effect, charge the defendant with a reckless and

utter disregard of the safety of its employees. Regard must be had to the situation which then confronted the plaintiff. It was his duty to obey the order. The lives of scores of others might be jeopardized if he failed at that moment. Under the circumstances the defendant may not avoid liability because of its own admitted dereliction.

It is insisted that the court should have rendered judgment for the defendant on the special findings, nothwithstanding the general verdict. We have given consideration to the arguments of the parties, and are of the opinion that the answers were not so inconsistent with the general verdict as to require a judgment for the defendant.

Complaint is made of the refusal to give certain instructions requested by the defendant, and the giving of others to which objection was made. We find no error in this regard that would warrant a reversal of the case. Other complaints that the court erred in overruling a demurrer to the evidence and in overruling motion for a new trial are not well taken.

. The judgment is affirmed.