No. 39,946

THOMAS V. HARVEY, JR., *Appellant,* v. CARL PALMER and DELVA PALMER, *Appellees.*

(296 P. 2d 1053)

Opinion filed May 5, 1956.

*D. O. Concannon,* of Hugoton, and *Wm. P. Thompson,* of Wichita, argued the cause, and *A. W. Hershberger, J. B. Patterson, Richard Jones, H. E. Jones,* and *Jerome E. Jones,* all of Wichita, were with them on the briefs for the appellant.

*Bert J. Vance,* of Garden City, argued the cause, and *C. E. Vance,* and *A. M. Fleming,* both of Garden City, *Charles H. Fleming,* of Scott City, and *Perle C. Frazee,* of Syracuse, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: In this action by a farm employee against his employers for personal injuries the trial court sustained defendants' demurrers to plaintiff's evidence and the plaintiff appeals from that order.

There is no question about the pleadings except a requested amendment of the petition to conform to the proof which will be covered after a brief summary of the facts necessary to show the basis for defendants' demurrers.

The particular pieces of machinery involved in this appeal were a Letz grain grinder and a model LLA Case tractor. The grinder had a telescoping cylindrical power take-off shaft which was connected to the power unit, the Case tractor, which, in turn, furnished the power to run the grinder. The shaft on the power unit had a telescoping shaft cover for protective purposes. We will continue to refer to this covering as a *shield.*

Plaintiff had worked on farms most of his life and until the date of his accident on January 25, 1954, at which time he was thirty years of age; he had built fences, worked with and around cattle, ridden horses, shocked feed, and driven tractors; with the help of a previous employer he had used a John Deere feed binder and tractor with a power take-off shaft; had driven a truck, and had bound cane with machinery using a power take-off shaft with an immovable shield over it.

On cross-examination plaintiff stated he had worked around a combine and knew that its chains, wheels and pulleys were dangerous; he knew the moving and turning parts of tractors were dangerous; he had also run a cement mixer for defendant Carl Palmer;

the mixer sat on the back of a Ford tractor and was operated by a power take-off shaft; he had driven a truck in cutting ensilage where the ensilage cutter had knives in which a man could get hurt if he was not careful; he had used a Ford tractor with a mowing machine which had moving parts on it; he would not stand in front of moving machinery; he knew that his hand would be cut off if he put it into an operating fan and that the rotating chain on a binder was dangerous; he had worked on other jobs but these did not involve farming or machinery.

The record showed that plaintiff had not worked around machinery as a mechanic and that any experience he had therewith was only a day or two at a time.

After several conversations, during which their wives were present, plaintiff had reached an agreement with Carl Palmer and he went to work for Palmer in 1953. Plaintiff's evidence showed that defendants owned certain land which they referred to as Carl Palmer's land and other land which they called Mrs. Palmer's. Plaintiff worked on the lands of both defendants. They owned cattle which plaintiff worked with. The cattle were all run together and the calves from all of them had Carl's brand. Mrs. Palmer had given plaintiff's wife a check one time for plaintiff's labor. The foregoing evidence was all that appeared in the record touching on any partnership existing between defendants. Since this was the only showing of plaintiff's alleged partnership between the defendants, we agree with the trial court that it was insufficient to establish that relationship. Mrs. Palmer's demurrer on that ground was good and it was properly sustained as to her. We will hereafter refer to Carl Palmer as the defendant.

This brings us to the vital question as to whether plaintiff's evidence of negligence on the part of defendant was sufficient when attacked by demurrer. Another issue is defendant's contention that if plaintiff's evidence was sufficient to show actionable negligence on the part of the defendant, that such evidence also affirmatively showed that plaintiff was contributorily negligent or that he, knowing the extent of the danger involved, voluntarily assumed the risk thereof as a matter of law. In other words, was the plaintiff, as a matter of law, guilty of contributory negligence, or did he voluntarily assume the risk, either of which was the proximate cause or one of the proximate causes of his injuries so as to bar his right to recovery?

To determine these contentions we will have to summarize additional evidence touching thereon. Plaintiff had used the machinery involved on three occasions while working for defendant. The first time was with a youth by the name of Truman Morgan and on that occasion corn was ground. The shield was in the shed but it was stiff and wouldn't work because it wouldn't expand even though it was bumped with a hammer to jar it apart. There was conflict between the testimony of plaintiff and that of Truman Morgan as to the time of a conversation they had regarding the danger of using this equipment without the shield. On cross-examination Morgan said the conversation was held immediately after plaintiff went to work, but plaintiff said it was after he had been hurt and was in the hospital. Morgan testified he had used the shield on the equipment before plaintiff's employment and the shield had worked all right but that on the occasion of grinding the corn with plaintiff, the shield would not spread wide enough so they used it as a funnel to run the corn back into the granary. This operation was seen by defendant. Morgan had previously told defendant about the shield and Palmer had said it was *awful dangerous* to use the equipment without the shield being on there. After the conclusion of the corn grinding incident plaintiff and his wife were present during a conversation wherein plaintiff told defendant that the shield would not work and defendant explained that someone had cut a hand on it, it had been thrown aside and had been lying there collecting dust and moisture until defendant had picked it up and put it in the shed.

On the morning of January 25, 1954, defendant came to plaintiff's home about 7:30 or 8:00 a. m. and told plaintiff to grind cobs for the chicken house floor; he said that plaintiff had neglected this terribly and it had to be done; defendant was not too happy about the situation. The Letz grinder and Case tractor were the only equipment on the place with which to grind the cobs. It was cold and frosty and there was a little snow on the ground. A Ford tractor had to be used to start the Case tractor. Plaintiff and defendant hooked the grinder to the Case tractor. The grinder had to be greased and thawed out by hot water which plaintiff carried from his house. The shield was not over the power shaft. Defendant said he would help grind the cobs but he went into the house to prepare his income tax returns and left plaintiff alone to run the operations. Plaintiff used a Chevrolet pick-up truck to

catch the cobs after they were ground. The truck was backed up against the left side of the grinder which was attached at the rear of the Case tractor by the power shaft. Near the center of the six- to seven-foot power shaft there was a permanent oil zerk which was used to grease the telescopic action of the shaft. The right side of the grinder was right up next to the pile of cobs. Plaintiff threw the cobs over the back of and into the grinder. Shucks wound around the spool until the cobs would not go down into the grinder. Plaintiff shut the tractor off once and pulled the husks out by hand and then resumed operations. The spool became filled with husks a second time and plaintiff walked around the truck and stepped up on the hitch to jerk the hand clutch on the left side of the tractor next to the fender. Plaintiff slipped off the hitch, his right hip came in contact with the revolving shaft, his clothing was caught and plaintiff was severely injured.

Referring again to the cross-examination of plaintiff, he testified that he knew the shield belonged over the power shaft to cover it and when asked if he knew the machine was dangerous without it he said,

"No, I didn't. If I had any idea that machine would hurt me like it did I would have never touched it."

Plaintiff further testified:

He knew about "U" joints but could not discuss them without seeing them because they were on larger equipment, were in connection with square shafts and the shields on them were permanent; such equipment had to have shields or it was dangerous; he could not tell whether the zerk caught him or not; there had been no oil applied to the zerk that morning; he did not remember for sure that he knew the zerk was there; he had used the equipment to grind some sixty 100-pound sacks of cotton seed and a young farm boy by the name of Wesley Baldwin had worked with him on that occasion; he had warned defendant's son to watch and not get into the shaft; plaintiff knew the shield was to protect people or animals, or anything from getting into the shaft; defendant had told him that the work had to be done that day; he had bought a tire while defendant was absent and had told the seller that defendant would deal with him when he got back; the shield in question did not cover very much, if any, of either of the universal joints; the universal joint at the tractor end was covered by a permanent

shield and the universal joint on the grinder end was only about six inches from the grinder.

Mrs. Harvey's testimony corroborated that of plaintiff in regard to defendant's conversation about grinding the cobs and how the shield had been thrown aside after a man had cut his hand on it. Defendant had picked up the shield and put it in the shed and it hadn't been used since.

Plaintiff's first complaint of error on the part of the trial court in refusing to allow an amendment to his petition to conform to the proof, as follows,

"Although the plaintiff knew that the power take-off shaft was unguarded, he did not know or appreciate the danger of operating it in that condition . . . ,"

is without merit because the record disclosed that plaintiff successfully resisted a motion by defendant to make definite and certain whereby plaintiff was requested to state whether he knew the unguarded shaft was dangerous. The trial court in its discretion may have allowed such an amendment (*Colin v. DeCoursey Cream Co.,* 162 Kan. 683, 178 P. 2d 690; G. S. 1949, 60-759) but in *Fiest v. Steere,* 175 Kan. 1, 259 P. 2d 140, this court there said:

"Moreover, this court has long been committed to the rule that the allowance or denial of requests to amend pleadings are matters over which a trial court has authority to exercise wide discretion and that its action with respect thereto will not constitute reversible error unless it affirmatively appears the amendment allowed or denied is so material that it affects the substantial rights of the adverse party and constitutes a clear abuse of judicial discretion." (p. 4.)

We think plaintiff failed to show that the denial of the amendment by the trial court was an abuse of judicial discretion.

The second challenge of the trial court's ruling which sustained Mrs. Palmer's demurrer on the ground there was no showing of a partnership relation between her and her husband has already been disposed of herein. There was no reason assigned by the trial court for sustaining defendant's demurrer. Thus it becomes necessary for us to treat all the elements of the demurrer in the same manner as they are presented by the parties in this record.

We now come to the first part of the final question heretofore stated as to whether defendant was negligent. In approaching this phase of the appeal, we must bear in mind our constant holding that in considering the sufficiency of evidence tested by a demurrer thereto, the evidence and every reasonable inference to be drawn therefrom must be liberally construed in favor of the party ad-

ducing it. Such evidence will not be weighed even though there may be conflict between the witnesses or in the direct and cross-examination thereof. When so considered, if there is any evidence which sustains plaintiff's case, then the demurrer should be overruled. (*McCracken v. Stewart*, 170 Kan. 129, 223 P. 2d 963; *Palmer v. The Land & Power Co.*, 172 Kan. 231, 239 P. 2d 960; *Messinger v. Fulton*, 173 Kan. 851, 252 P. 2d 904; *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909; *Siegrist v. Wheeler*, 175 Kan. 11, 259 P. 2d 223; *Maust v. Ioerger*, 177 Kan. 558, 280 P. 2d 566.) In applying the above rule to the evidence in this case it must inescapably be concluded that the evidence set out sufficient facts to establish negligence on the part of defendant in furnishing the equipment without the shield.

The second part of the final question as to whether the plaintiff was guilty of contributory negligence which would bar recovery is very closely related to the final proposition of voluntary assumption of risk. From the facts set out herein, it cannot be denied that minds of reasonable men might differ in concluding whether plaintiff was guilty of contributory negligence.

In the McCracken case, *supra*, a truck driver, who was proceeding down a street at about midnight, had shifted to second gear after discerning an unlighted barrier ahead, had traveled 100 feet further, observed an excavation fifteen feet ahead and in trying to turn sharply to avoid it, had engaged a portion of the excavation, overturned the truck and was injured. It was there held the question of contributory negligence should be submitted to the jury. Later in *Schneider v. Stewart*, 170 Kan. 158, 223 P. 2d 698, involving an intersection collision where the trial court sustained a demurrer to plaintiff's evidence, and then later granted plaintiff a new trial, this court said,

"Where reasonable minds might reach a conclusion in favor of the plaintiff, the demurrer should be overruled." (p. 162.)

Another intersection collision case reiterated this rule. In *Fry v. Cadle*, 171 Kan. 14, 229 P. 2d 724, it was substantially stated that in holding the question of contributory negligence of plaintiff was a jury question in common-law damage actions where plaintiff alleged defendant's negligence and defendant pleaded contributory negligence of plaintiff, each party was entitled to a trial by jury as a matter of right, and these should not be converted into trials by the court. In order to make it a matter for determination by

the court the evidence should be so clear that reasonable minds could have but one opinion—that the party was negligent. In the Fry case the court concluded the contributory negligence of the plaintiff was clearly a question of fact for the jury.

In *Messinger v. Fulton,* supra, which was a malicious prosecution action, the facts were not in dispute as to malice, probable cause, or whether the evidence disclosed a legal defense to the action and were primarily for decision by the court, but it was there stated,

". . . if the facts tending to establish the existence or want of existence of any or all of such questions are in dispute it is the duty of the trial court to submit such question, or questions, to the jury under appropriate instruction defining the law applicable to the rights of the parties under all the evidence of record." (Syl. ¶ 2.)

Finally, in the Siegrist case, *supra,* which involved another street intersection collision, this court reversed the trial court's judgment and set aside its order sustaining demurrers to plaintiff's evidence. The rule was there stated that the question as to whether plaintiff was guilty of contributory negligence must be submitted to the jury if the facts are such that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon.

We think this consistent following of the general rule regarding contributory negligence on the part of a plaintiff is sufficient to bind us herein to hold that plaintiff's evidence certainly does not show contributory negligence as an undisputed fact. At best it shows only that there may be a disputed fact as to whether plaintiff was guilty of contributory negligence. As a result thereof we think the demurrer should have been overruled on this ground.

In considering the final contention that the trial court was correct is sustaining the demurrer for the reason that plaintiff voluntarily assumed the risk, it might be well to mention the case of *Wheeler v. Boyer,* 136 Kan. 648, 17 P. 2d 931, wherein an intelligent eighteen-year-old farm employee, who had watched his employer use the same process, poured kerosene on a burning torch and an explosion occurred. The boy had used gasoline and kerosene during all times from the age of thirteen years to the time of the accident. The court said it was a matter of common knowledge that gasoline and kerosene are highly combustible and recovery was denied.

The case at bar does not even approach the above situation.

It may be said that farming with machinery and power devices has become the modern, usual, and accepted method but we still cannot overlook the rule that if there are disputed facts as to whether a farm hand who had used such types of modern, power-driven apparatus five times during his experience realized and appreciated or knew the danger, it should be a question of fact for the jury to decide and not one for the decision of the court as a matter of law. Plaintiff's evidence here was that he had no knowledge the revolving shaft would hurt him as it did and he did not remember having seen the oil zerk, and further that he had never applied any oil to it even though on previous occasions he had oiled the grinder. At the time there was no other equipment available for grinding the cobs than that which plaintiff used. The defendant not only had full knowledge of the dangerous condition of that equipment, but he helped plaintiff start the Case tractor and hook the grinder onto it before leaving plaintiff to perform the job alone. It should be borne in mind that the shield was not on the shaft when plaintiff went to work for defendant and during the conversation with plaintiff and his wife, immediately after seeing plaintiff and Morgan use the shield for a funnel when grinding corn, defendant mentioned that the reason the shield probably would not work was that it had been collecting dust and moisture before he picked it up and placed it in the shed.

Defendant contends there are two exceptions to the general rule of assumption of risk and unless those, or one of them, are made to appear affirmatively by plaintiff's evidence, then he is barred from recovery as a matter of law. One of these situations occurs when there is a promise by the employer to fix a faulty tool and he directs the employee to continue after complaint is made by the employee. (*Cheek v. Eyth,* 149 Kan. 586, 89 P. 2d 11.) This is a good rule of law. It is based on the reasoning that a new contractual relationship arises out of the promise to fix and compliance by the employee with the direction to go on working. (p. 589.) However, just preceding this explanation we find the court in the Cheek case stated:

"It is well established that where an employee complains about the defective and dangerous condition of the machinery or tools furnished for his use and the employer promises to have them repaired or replaced with good ones, and relying upon the promise the employee continues to work, as directed, the employer is liable, during a reasonable period thereafter, for the employee's injuries received in using the defective tools, unless the danger was so appar-

ent and great that no prudent man would have continued to subject himself to it." (p. 588-589.)

In our case not only did defendant know his machinery was defective but he had been told by Morgan about the danger of the unprotected shaft. He had stated it was *awful dangerous* to use the machinery without the shield being on. Are we to say that defendant did nothing to order the shield put on, or fixed so it could be put on, and that any employee working for him who had little or much general knowledge of machinery, assumed the risk of working around it while defendant escaped liability because he did not promise to fix or replace the faulty part? We think not. From the record before us plaintiff's knowledge of the machinery and the shield was slight because he could not, with the help of Morgan, loosen the shield so it would function telescopically.

From what has been said we do not believe it is necessary to cover defendant's second exception to the assumption of risk which involves a situation where the employer orders or directs an instant act, prescribes the method of carrying it out, and the employee responds without time to reflect. (*Rush v. Brown*, 153 Kan. 59, 109 P. 2d 84.)

Many other authorities have been cited by counsel and noted by the court but we can see no benefit to come from setting them all out here.

In view of the dispute in the evidence as to plaintiff's knowledge and understanding of the danger and as to defendant's liability under circumstances already narrated herein, we think the plaintiff has the right to have these matters submitted to the jury.

The judgment of the trial court is affirmed so far as the sustaining of the demurrer of Delva Palmer is concerned and reversed with directions to overrule the demurrer of Carl Palmer and to proceed with the trial.

THIELE, PARKER and PRICE, JJ., concur in that portion of the opinion which affirms the ruling of the trial court as to the demurrer of Delva Palmer, and dissent from that portion of the opinion which reverses the ruling of the trial court as to the demurrer of Carl Palmer.