No. 44,761

LADISLADO M. HERNANDEZ, *Appellee, v.* EMERY BACHAND and WILLIAM E. ESFELD, *Appellants.*

(427 P. 2d 473)

Opinion filed May 13, 1967.

*Dale E. Saffels,* of Garden City, argued the cause, and *A. M. Fleming, Lloyd H. Haag,* and *Clifford R. Hope, Jr.,* all of Garden City, were with him on the brief for the appellants.

*Logan N. Green,* of Garden City, argued the cause, and *Ray H. Calihan, Ray H. Calihan, Jr.,* and *Daniel J. High,* all of Garden City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Ladislado M. Hernandez, brings action to recover damages for loss of the four fingers of his right hand. A verdict was returned in his favor and judgment was entered accordingly. The defendants have appealed. We shall refer to the parties as plaintiff and defendants, respectively.

Basically, two points are before us. First, that the trial court erred in overruling the defendants' motions for directed verdict, one motion being made at the conclusion of the plaintiff's evidence and

the other at the conclusion of the trial, and second, that the court erred in overruling the defendants' motion for a new trial.

Primarily the plaintiff's first contention is based on two principles: assumption of risk and contributory negligence. A recital of certain facts is required for intelligent discussion.

On the date of the accident the plaintiff was a farm laborer employed by defendants on their farm near Deerfield, Kansas. He had worked on farms for some six or seven years and was familiar with power machinery. At the time in question he had completed one year at the Garden City Junior College, and found it necessary to work in order to complete his education. Although not material to any issue now before us we nevertheless note that after his accident the plaintiff finished his college education and, at the time of trial, was teaching school.

As part of their farming operations the defendants engaged in the feeding of cattle, an agricultural pursuit, we may add, which has become quite extensive on the high plains of Western Kansas. In connection with their cattle operations the defendants owned and employed a feed mill, or feed grinder. Power for the grinder was furnished by a tractor through means of a power take-off shaft containing universal joints, or U-joints. The evidence is uncontradicted that the shaft was not protected by guards or other means.

The feed mill was located in a small cement pit from which the ground feed was augered into a bin. The grain to be milled was scooped into a hopper leading to grinders or rollers located underneath, where the grain would be ground into feed. Near the bottom of the hopper, but above the grinders, was a so-called shield or guard which could be operated by a screw-type handle, or crank, to control the size of the opening through which the grain was fed into the grinders. On the date in question the handle, or crank, was bent in such a way that the aperture above the grinders could not be entirely closed. No other guard gave protection from the grinders.

On the day of his injury, as the plaintiff testified, he and Mr. Bachand, one of the defendants, began preparations for starting the mill. Mr. Bachand cleaned out the pit, scooping out the mud and slush which had accumulated there, and throwing it on the ground north and east of the mill, while the plaintiff performed other preliminary tasks.

Shortly after the mill was started, and the milling began, Bachand

left the machine and the plaintiff continued the operation by himself. After he had finished grinding the feed the plaintiff testified that, as he had been told to do, and as was his usual custom, he continued to run the rollers and proceeded to clean the hopper by tapping it on each side to knock any remaining material into and through the rotating rollers; that while he was so engaged, he slipped and fell toward the drive shaft; that at this point, to avoid contact with the shaft or U-joints, he made a grab for the hopper, which he missed, and his right hand went into the rollers. As a result, the four fingers of his right hand were severed.

Two acts of negligence are charged against the defendants: One, failure to provide a guard around the shaft and its U-joints and the other, failure to provide protection against the grinders or rollers. As we have previously indicated, the defendants assert in defense of the plaintiff's claim that plaintiff assumed the risk of injury and was also guilty of contributory negligence. In considering such defenses it may be assumed the defendants were negligent in the respects alleged.

The doctrine of assumption of risk is of ancient origin and has long been embraced by the courts of this state. As this court pointed out in *Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253, the rule rests in the express or implied agreement of an employee that, with knowledge of the danger to which he will be exposed, he nonetheless agrees to accept responsibility for injuries which might result. Of course, the court continued, the risks assumed must have been known to the employee or must have been such that the employee, in the exercise of reasonable care for his own safety, should have known of them.

The language of *Bancord* has been quoted with approval in *Parker v. City of Wichita,* 150 Kan. 249, 92 P. 2d 86; *Taylor v. Hostetler,* 186 Kan. 788, 352 P. 2d 1042 and *Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765. We shall attempt no improvement of the language used in these cases.

Testimony given by the plaintiff discloses that he had worked with or around power machinery for several years prior to his injury, and was experienced in heavy equipment and with farm equipment; that he had been employed by the defendants for at least a year prior to his accident and had operated the feed mill many times; and that he considered himself competent to operate the same. The plaintiff further testified he was aware that the equip-

ment was dangerous; that he knew he could be seriously injured if his hand became caught in the grinders or if he got caught in the power take-off shaft; that the grinder and power take-off were both in the same condition on the day of the accident that they had been in for the past year; and that he operated the equipment on the day in question in the same way he always had done and that there was nothing about its operation on that day that he had not known about prior to his injury.

The plaintiff also candidly admitted that he knew the day was rainy and misty; that he knew it was damp underfoot, and that it was slick and muddy; that he knew the slush or mush had been thrown onto the ground where he was standing; and that he got into the rollers by reason of slipping on some mud.

Measured by the rules set out in our many decisions exploring the reaches of the doctrine of assumption of risk, and we have mentioned but a few of our cases, we believe that the plaintiff's own testimony, which we deem commendably frank and honest, precludes his recovery. In four decisions of recent vintage (*Blackmore v. Auer*, supra, *Anderson v. Cooper*, 192 Kan. 723, 391 P. 2d 86; *Uhlrig v. Shortt*, 194 Kan. 68, 397 P. 2d 321; and *Wilson v. Deer*, 197 Kan. 171, 415 P. 2d 289) we have dealt at some length with the assumption of risk doctrine in relation to injuries resulting to farm laborers from dangerous and unsafe equipment furnished by their employers. The discussions in each of these cases lucidly expound and learnedly depict the rule and we shall say of them, only, that they support the view we take of the circumstances inhering in the present action.

This court, with considerable consistency, has opined that the assumption of the customary risks of any given employment is ordinarily not a jury question, but a question of law. (*Lively v. Railway Co.*, 115 Kan. 784, 225 Pac. 103.) In *Blackmore v. Auer*, supra, we said:

"The assumption of the usual risks of an employment is not ordinarily a jury question. It is a matter of law. It is only where the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent man could appreciate and understand, the workman who persists in the employment assumes the risk of it." (pp. 444, 445.)

In the case presently under consideration, the unguarded condition of both shaft and grinder was not concealed, but was manifest.

The absence of protecting guards would be obvious to anyone who looked at or who worked with the equipment. Especially would the hazards involved be apparent to a farm worker who was experienced in the operation of power equipment and machinery. Indeed, the plaintiff quite forthrightly conceded that he was fully aware of the unprotected shaft and the unguarded rollers and knew the dangers they posed to a person who might come in contact with them. Nevertheless he continued to operate the feed mill in that very condition for over a year because, as he put it, "I didn't think it could happen to me. I was careful."

We believe the evidence of record establishes, as a matter of law, that the plaintiff assumed, as an incident of his employment with the defendants, the very risks and perils which led to his injuries. In discussing the doctrine of assumption of risk, this court in *Kleppe v. Prawl,* 181 Kan. 590, 594, 313 P. 2d 227, 63 A. L. R. 2d 175, had this to say:

". . . assumption of risk arises through implied contract of assuming the risk of a known danger; the essence of it is venturousness; it implies intentional exposure to a known danger; it embraces a mental state of willingness; it pertains to the preliminary conduct of getting into a dangerous employment or relation; it means voluntarily incurring the risk of an accident, which may not occur, and which the person assuming the risk may be careful to avoid; it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs. . . ."

The plaintiff briefly suggests that he should be entitled to prevail because of a promise by the defendants to equip the power take-off with a guard and to repair the shield covering the rollers. We cannot agree that the evidence can be given such an interpretation.

It is true there is an exception to the general rule of the assumption of risk in those cases where an employee, after complaint has been made of a defective or dangerous condition, is induced to continue his service for a reasonable time by reason of his employer's promise to remedy the defect. (*Railway Co. v. Sledge,* 68 Kan. 321, 74 Pac. 1111; *Palmer v. Midland Valley Rld. Co.,* 118 Kan. 507, 235 Pac. 853; *Johnson v. St. Joseph & G. I. Rly. Co.,* 125 Kan. 38, 262 Pac. 494.) The application of this exception to the rule presupposes that the employee has complained of the dangerous condition to his employer; that the employer has promised to remedy the dangerous condition; and that the employee has thereafter continued his service for a reasonable time in reliance upon the employer's promise.

In the present case it is our judgment that the essentials on which the exception is based simply have not been established. Although the plaintiff stated that he and Mr. Bachand had talked more than once about fixing the shield and covering the shaft, he also testified that Mr. Bachand was the one who first mentioned it and that he (plaintiff) could not remember ever asking Bachand to make repairs. The plaintiff's testimony further reveals that he wanted the machinery repaired so "we wouldn't have so much difficulty starting the thing" and that safety "never entered my mind."

We believe the conversations which took place between the plaintiff and Mr. Bachand never achieved the significance of a complaint on the one hand, or a promise on the other. It does not appear from the record that plaintiff initiated the discussions or ever complained of dangerous conditions. Nor do any of Bachand's remarks ever rise to the dignity of a promise. As this court once said, in *Ernst v. Railroad Co.*, 105 Kan. 706, 185 Pac. 1053, his utterances do not "bear the construction of a promise to remove or dispel some danger." (p. 710.)

Nor do we find any evidence in the record from which it may be inferred that the plaintiff was induced to remain in the defendants' employ because of the latter's assurance that unsafe or dangerous features would be eliminated. The plaintiff never testified that he remained on the job because of any promise on the part of his employers to repair defective machinery. The conclusion, to us, seems inescapable that plaintiff gave no thought whatever to safety requirements; his stated interest lay in the ease with which the machinery could be started. Taking his evidence at face value, we believe that the plaintiff entertained no idea of leaving the defendants' service if repairs were not made. There was no occasion for him to terminate his employment for that reason, since he did not regard his employment as dangerous. He testified that getting hurt never entered his mind; he thought it would never happen to him; that he was careful. (See *Railroad Co. v. Mealman*, 78 Kan. 496, 504, 505, 97 Pac. 381.)

We are not unmindful of the tragedy that befell Ladislado Hernandez on that rainy, misty day in Kearny County, but our judgment must be based on tested legal principles. Among these principles is the one we call the assumption of risk. It is a doctrine which, in our opinion, precludes the plaintiff from recovering in this case. We should like to add, however, that while sympathizing

with plaintiff in his physical loss, we rejoice in the courage and spirit which has impelled him to earn a college degree and has established him as a member of a proud profession.

What we have said makes it unnecessary to discuss the plaintiff's alleged contributory negligence as well as certain errors which the defendants have contended require a new trial.

The judgment of the trial court is reversed with directions to sustain the defendants' motions for directed verdict and to enter judgment in favor of the defendants.

O'CONNOR, J., concurring specially: I respectfully disagree with my brethren of the majority that plaintiff's testimony precludes his recovery as a matter of law under the doctrine of assumption of risk. In my opinion, the evidence was such that plaintiff was entitled to have the question submitted to the jury. (*Harvey v. Palmer,* 179 Kan. 472, 296 P. 2d 1053.) I agree, however, that the judgment be reversed, but the case should be remanded for a new trial, because the general verdict is not supported by the jury's purported answers to special questions, the members of the jury being unable to agree unanimously on said answers.

FATZER, J., joins in the foregoing specially concurring opinion.