No. 43,584

HENRY U. GERBER and EVELYN L. GERBER, his wife, *Appellants*, v. HAROLD K. BUEHLER and LAURA J. BUEHLER, his wife, *Appellees*.

(397 P. 2d 352)

Opinion filed December 12, 1964.

*Victor F. Schmidt*, of Columbus, Ohio, argued the cause, and *Conrad Miller*, of Kansas City, and *Bernard L. Glover*, of Lenexa, were with him on the briefs for appellants.

*Charles S. Schnider*, of Kansas City, argued the cause, and *Joseph Cohen*, *John E. Shamberg*, *Joseph P. Jenkins*, *Thomas H. Finigan*, *Joseph J. Poizner* and *Clark E. Tucker*, all of Kansas City, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This appeal is from a judgment enforcing an oral contract to convey a one-half interest in a section of land in Wyandotte County; to dissolve the partnership of the appellants and the appellees, and for an accounting between the parties.

· The appellants, Henry U. Gerber and Evelyn L. Gerber, his wife, plaintiffs below, commenced this action on September 17, 1951. The amended petition alleged that they were the legal owners of 400 acres in Morton County and that the appellees, Harold K. Buehler and Laura J. Buehler, his wife, defendants below, were the owners of 640 acres of land in Wyandotte County; that on or about July 30, 1948, the parties orally agreed to become partners for the purpose of owning and operating the B & G Stock Farm, and that the defendants agreed to convey a one-half interest in the Wyandotte County section to the plaintiffs, both parties, however,

reserving 20 acres upon which each would build a home, and the remaining 600 acres would be partnership real estate; that the Wyandotte County property was to be considered of the value of $100 per acre and the defendants agreed to accept the 400 acres in Morton County at a like figure per acre for a one-half interest in the Wyandotte County land plus the sum of $8,000 to be paid to the plaintiffs in addition to the value of the Morton County land; that the partners made certain contributions to the partnership of their separately owned personal property for which each was given credit, and that by mutual agreement of the parties Harold K. Buehler was to act as bookkeeper and treasurer of the partnership and keep a record of its affairs.

The amended petition further alleged that the defendants refused to convey a one-half interest in the Wyandotte County real estate to the plaintiffs, and the prayer was that the plaintiffs recover joint possession of the Wyandotte County property, except the two 20-acre tracts upon which residences had been constructed; that the Wyandotte County real estate be partitioned, and that the partnership be dissolved and that a referee be appointed to make a full accounting of all partnership transactions since its commencement in July, 1948, to its termination in August, 1951.

The defendants' answer admitted the parties had entered into a partnership agreement for the purpose of operating a stock farm in Wyandotte County, but denied that they had orally agreed to convey a one-half interest in the real estate to plaintiffs; they admitted that they had taken title to the 400 acres in Morton County and had sold it to one Carl Brollier, of Hugoton, but alleged that they were acting only as agents for the plaintiffs and that the proceeds of the sale of the Morton County farm were paid to the plaintiffs.

With the issues thus framed, the case was tried to a jury which returned a finding in favor of the plaintiffs on their contention there was an agreement to convey a one-half interest in the Wyandotte County real estate to them. The district court then referred the accounting of the partnership affairs to a referee who heard considerable evidence.

None of the parties were satisfied with the jury's verdict, and by mutual agreement a new trial was granted upon the district court's stipulation that the case would be referred to a referee upon the same issues as then framed by the pleadings. The Honorable James

D. Howell, a member of the Wyandotte County Bar, had been appointed referee by the district court following the jury's verdict in 1953 and had heard considerable evidence with respect to the accounting. In view of that fact, the district court reappointed Mr. Howell as referee to try all the issues of law and of fact raised by the pleadings.

On January 14, 1957, the referee commenced hearing the evidence, and the hearing continued for ten weeks. Later, on September 26, 1957, the court appointed a public accountant to assist the referee in the accounting features of the case.

On January 11, 1958, the referee filed an exhaustive and detailed report, together with the accountant's summaries, and found generally in favor of the plaintiffs that there has been an oral agreement to convey to them a one-half interest in the 600 acres in Wyandotte County together with a 20-acre tract for their residence; that they had fully performed their part of the agreement for an exchange of property whereby they deeded the Morton County land to the defendants for an undivided one-half interest in the Wyandotte County real estate plus the sum of $8,000; that the respective spouses of the parties had consented to and acquiesced in the partnership agreement; that the defendants should convey the one-half interest in the 600 acres together with the 20-acre tract upon which the plaintiffs had built their residence. The referee further found that the defendant Harold K. Buehler was the accounting partner, and placed the burden of proof upon him to prove all items of the accounting.

As previously indicated, the referee heard weeks of testimony and considered hundreds of exhibits all of which proceedings constituted some 7,000 pages of transcribed reporter's notes. Many of the items for which the plaintiffs claimed credit were disallowed but the referee allowed numerous items claimed by them. He allowed numerous items claimed by the defendants but also disallowed many others. The accountant's summaries reflected all of the items allowed to the plaintiffs and the defendants and also reflected the items which were proper charges against the respective partners.

From the date of the filing of the referee's report on January 11, 1958, to April 6, 1962, the records of the district court were cluttered with a multitude of plaintiffs' motions, affidavits, objections, notices and so forth, and the court held many hearings and heard lengthy and exhaustive arguments on various matters relating to the appeal

and on those not relating to it, all of which were fully abstracted.

On September 22, 1961, the district court filed a written opinion approving the findings of the referee that there was an oral agreement to convey a one-half interest in the Wyandotte County real estate to the plaintiffs and that the oral agreement had been fully performed to take it out of the statute of frauds. The court approved the accounting of the partnership with the exception of two items relating to the sale of the Morton County property which were allowed in favor of the defendants, one being an item of $5,000 due to the abatement of a portion of the sale price of the Morton County property and a $1,000 fee in connection with the sale thereof. Both items being brought about because of an encumbrance on the title of the Morton County property made by the plaintiffs and resulting in the reduction of the net sale price received by the defendants.

On December 8, 1961, the court again referred the matter to the public accountant to bring the accounting up to date with respect to items of taxes and mortgage and insurance payments which had been paid by the defendants subsequent to the original accounting report. Following the filing of the supplemental accounting, the plaintiffs again filed numerous and voluminous motions, objections and arguments, and on January 10, 1963, the court rendered judgment in accordance with the referee's report as modified and approved by the district court and in accordance with the supplemental accounting.

Although the plaintiffs were successful in the main issue of the lawsuit, that is, the contention there was an oral agreement to convey a one-half interest in the Wyandotte County property to them, they were dissatisfied with items of the accounting which were allowed the defendants, and, accordingly, perfected this appeal. The defendants did not cross-appeal from any feature of the district court's judgment.

There are more than 550 pages of the printed record on appeal containing thirty-five specifications of error. The plaintiffs' brief presents twelve issues, none of which are identical with or follow in the same order of any of the thirty-five specifications of error. To marshall the evidence and state the reasons for the court's conclusion would consume, with the utmost condensation, probably 60 to 80 pages of the Kansas Reports, and perhaps twice that number. In the end, the court would have done no more than review

questions of fact neither novel in kind nor of any interest to anyone except the parties to the appeal. Generally speaking, no principle of law of striking interest and no new application of old principles are involved except as hereafter noted, and when the ultimate facts have been determined, as the referee and the district court did, the conclusions of law follow as a matter of course. Under these circumstances, the court does not believe that any useful purpose would be served by the preparation of a lengthy and detailed opinion.

The plaintiffs' brief is replete with arguments of how the referee and the district court should have decided the evidence and with charges of coercive and oppressive conduct on the part of the district court against the plaintiffs, and with irregular proceedings to deprive them of their property and property rights in violation of due process of law. The record has been fully and carefully examined, and all of the plaintiffs' charges against the district court are wholly unwarranted and completely refuted by the record. Furthermore, findings made by the referee including the original and supplemental accountings as approved by the district court, or as modified and approved by that court, are supported by substantial evidence and will not be disturbed by this court on appellate review. (*Wichita Gas Co. v. Public Service Comm.*, 126 Kan. 220, 268 Pac. 111; *In re Estate of Eckel*, 191 Kan. 11, 379 P. 2d 346.)

Specifically, the plaintiffs complain of an order made on April 18, 1955, whereby both parties were enjoined from using the 600 acres in Wyandotte County to pasture their cattle or to grow hay except upon written lease duly made under the order of the district court. They contend they were entitled to full possession of the 600 acres from the time of the inception of the oral contract in July, 1948, by virtue of being cotenants with the defendants, which dated from the time of the oral agreement. They argue that all rental payments for possession and use of the property during the period they were awarded leases were illegally extracted and the court erred in not permitting them to recover the total of such amounts. In their brief they state:

"The trial court hammered the first $14,000.00 out of the Appellants by the coercive contracts against public policy, and in addition thereto used the sledge of oppression in contravention of due process in extracting the additional $3,000.00.

The plaintiffs leased the 600 acres under order of the court annually for several years and were required to pay rent for the use

of the farm during such periods, and were further required to pay $3,000 into court to cover fees and expenses. The defendants likewise leased the land from September 1951 to June 1954, and the referee debited them $8,250 for rent in the original accounting and they were also required to pay $3,000 into court for suit money. The record shows that $20,091.82 in rentals and condemnation awards were paid into court during the period of this litigation. Of this amount, $10,916.32 was used for payment of reporters, auditors, referee, surveyor fees and an equal sum of $1,000 for the attorneys for both parties. With certain adjustments it was determined that there was a balance of $9,175.50 remaining and the referee found that the parties were each entitled to an equal interest in said fund.

The plaintiffs' contention with respect to the recovery of the rental payments is not well taken. In the first place, all payments were voluntarily made ·by the plaintiffs after bidding for each annual lease, and in the second place, the defendants, from the inception of the litigation, contended they did not enter into an oral agreement to exchange properties and convey a one-half interest in the Wyandotte County property to the plaintiffs. The main issue of the lawsuit was whether the oral agreement was entered into and that question was resolved in favor of the plaintiffs only when the district court entered its final judgment on January 10, 1963. Until then the plaintiffs' interest had not been determined. This question was carefully taken into account by the district court and was properly determined by its judgment.

The plaintiffs next contend the court erred in failing to permit them to file a second and third revised amended petition with supplements thereto. The record shows the plaintiffs sought to file the third amended petition and supplement which attempted to add to their cause of action a count in tort for additional damages of $100,000, some six and a half years after the case had first been tried to a jury. It was offered for filing several months after the referee had spent ten weeks hearing evidence in the case. This alone would tend to discount any claimed abuse of discretion on the part of the district court. Moreover, the plaintiffs knew they would not be permitted to file the third amended petition because the new trial was expressly granted on the district court's stipulation that it be confined to the issues then raised by the second

amended petition. We quote a portion of Judge Benton's statement:

"And I further stated to counsel if I did set aside, or sustain the motion to set aside the stipulation, the findings of fact of the jury—and this is the point I am making—that when the case was retried, it would be retried on the simple theory that was set out in the second amended petition; at least it was the one the jury tried an issue of facts on, and I attempted at least to make that position clear to counsel for the plaintiff so that he would make no mistake."

Permission to file an amended petition after the issues have been made up is a matter of sound judicial discretion. (*Birch v. Solomon Nat'l Bank*, 125 Kan. 211, 263 Pac. 1044; *Fiest v. Steere*, 175 Kan. 1, 259 P. 2d 140; *Harvey v. Palmer*, 179 Kan. 472, 296 P. 2d 1053.)

The record demonstrates that the plaintiffs have completely failed to show affirmatively how or in what manner their substantial rights were affected.

The plaintiffs next list a so-called fraud series and commence their argument on this point with the statement that, "Probably no other case in the history of Kansas has involved so many avenues of fraud as the instant action." On the issue of fraud the record clearly shows that in answer to arguments of plaintiffs' counsel, the court stated:

"THE COURT: I am not finding that he did fraudulently and I don't like for you to make that reference, there has never been any finding of fraud in this action.

"MR. SCHMIDT: Well, Your Honor Please—

"THE COURT: You have said so many times you have convinced yourself, but there has never been any finding by anyone there has been any fraud in this action."

In this connection the plaintiffs discussed at length the matter of a $30,000 loan the defendants procured from the Prudential Insurance Company on the Wyandotte County property. The plaintiffs claim they should have credit for $21,290.59 for what they say was wrongfully charged in connection with the loan.

The plaintiffs' amended petition alleged:

"About March 24, 1949, *the partners agreed that in order to put them in funds for carrying on the partnership business,* Harold K. Buehler should make a loan on the B & G Stock Farm for $30,000.00, which he did make about March 24, 1949 with the Prudential Insurance Company. He thereupon kept $15,000.00 of said loan and undertook to pay to his partner Henry U. Gerber the other $15,000.00, but in fact only paid to Henry U. Gerber $13,000.00, leaving a balance due of $2,000.00 from Harold K. Buehler to Henry U. Gerber."

The referee gave full consideration to the circumstances of this loan and found that Harold K. Buehler should be debited with the receipt of the loan proceeds of $30,000. The final accounting showed that there was an entry made charging the $30,000 to Buehler. This item, like all other items, was charged to the proper person and was taken into consideration with all other items in arriving at the final balance.

Other points of which the plaintiffs complained deal with items of accounting which were considered by the referee after hearing weeks of testimony and which were approved by the district court or modified and approved in its final judgment. It is a familiar principle that the weight of the evidence is for the trier of the facts. This court has neither the time nor the jurisdiction to retry them. Those features of the controversy were determined upon the ultimate decision of the district court of factual issues it was called upon to decide. After a complete and exhaustive report by the referee, the district court resolved those issues as a matter of fact and this court approves the disposition made of them. There was substantial evidence to support the district court's findings of fact and conclusions of law relating to the amount of money due to the defendants. The judgment of the district court was equitable and just, and it is affirmed.

It is so ordered.