GREAT NATIONAL CORPORATION
and GNC Energy, Appellants,

v.

D.W. CAMPBELL, T.J. Fouts, Jr., George
Bristol, Charles Kuhn, A. Gary Muir,
and Larvena Investments, Inc., Appel-
lees.

No. 05–84–00428–CV.

Court of Appeals of Texas,
Dallas.

Feb. 15, 1985.

Rehearing Denied March 19, 1985.

Thomas R. Hartnett, Dallas, for appellants.

Edward S. Koppman, Dallas, for appellees.

Before STEPHENS, WHITHAM and GUILLOT, JJ.

GUILLOT, Justice.

This is an appeal from separate trials in the same suit. For clarity's sake, we shall refer to appellants collectively as GNC and appellees collectively as Campbell. In the declaratory judgment trial, the jury found that incident to the formation of a joint venture GNC and Campbell agreed that a certain coal lease would be part of the joint venture. In the accounting trial, the jury found that certain expenses GNC charged were unreasonable and unnecessary. GNC assigns thirteen points of error; Campbell assigns four cross points. We affirm the judgment against GNC, but reverse and render judgment on two of Campbell's cross points.

Distilling the facts to their most basic elements, we find that in 1973 GNC and Campbell entered into a joint venture to acquire and exploit coal leases and resources in Oklahoma. In 1979 GNC obtained a coal lease on land owned by the United States and received income from that lease. Campbell maintained that the Federal coal lease was within the terms of the joint venture; GNC said not so.

*The Declaratory Judgment Trial*

In its first three points, GNC contends that the judgment must be reversed because the agreement between the parties is unambiguous and susceptible of only one reasonable construction, viz., that the lease in the joint venture did not embrace the land under the Federal coal lease. To support this, GNC points to this language: "The area of interest *includes* those portions of LeFlore and Haskell Counties, Oklahoma, described and referred to in an instrument entitled agreement of lease, dated in November 1972, between Charles W. Martin and W.E. Roberts, Bokoshe Industries, Inc. et al." (emphasis added).

GNC argues that the word "includes" *limits* the area of the joint venture leases to those portions of LeFlore and Haskell Counties that are described in the Agreement of Release. It further argues that, because the joint venture is clearly limited, the contract between GNC and Campbell is unambiguous and that no parol evidence should have been offered to vary it. That being so, there would be no evidence to support the judgment.

Campbell, on the other hand, contends that the word "includes" is susceptible of more than one reasonable interpretation and, therefore, the contract is ambiguous. Specifically, Campbell contends that "includes" is a word of enlargement, not of limitation. They further argue that, ambiguity being established, the court correctly allowed the jury to hear parol evidence of the parties' intention, and that there is ample evidence to support the jury's finding that the Federal coal leases were *included* in the joint venture.

In examining the language of the contract, we note that the word "includes" has at least two reasonable meanings in the context of the entire contract. It may mean that *only* those portions of the LeFlore and Haskel Counties referred to in the Agreement of Release of November, 1972, are included in the joint venture. In that case, "includes" is a word of limitation. On the other hand, "includes" may be regarded as merely illustrative of those counties to be included. In that case, "includes" is a word of enlargement.

From the very instrument itself, we are unable to determine whether the parties intended the word "includes" to be a word of enlargement or a word of limitation. This is not surprising. There are many cases holding both ways in Texas and in other jurisdictions. Perhaps the court in *Peerless Carbon Black Company v. Sheppard*, 113 S.W.2d 996 (Tex.Civ.App.—Austin 1938, writ ref'd), best summarized the situation by stating that, although the word "including" is susceptible of different shades of meaning, most often it is used as

a term of enlargement. "[T]he words 'includes' and 'including' are regarded.... as being identical or equivalent to each other; and ... unless the context in which such words are used requires, they are never regarded as being identical with or equivalent to ... 'meant,' 'meaning' or 'by which is meant.'" *Peerless,* 113 S.W.2d at 997. Another court has held that the term "including"—a variation of "includes"—is "generally employed as a term of enlargement and not a term of limitation or enumeration." *Houston Bank & Trust Co. v. Lansdowne,* 201 S.W.2d 834, 838 (Tex.Civ. App.—Galveston 1947, writ ref'd n.r.e.); *cf. Skillman v. Abruzzo,* 352 Mich. 29, 88 N.W.2d 420 (1958). We hold that the contract is ambiguous and that the court was correct in admitting evidence to ascertain the intention of the parties. *See James Stewart & Co. v. Law,* 149 Tex. 392, 233 S.W.2d 558 (1950). The jury heard evidence of the circumstances surrounding the execution of the joint venture contract, and there is ample evidence to support its finding. We overrule points of error one, two, and three.

## The Accounting Trial

In its next two points of error, GNC contends that the court erred in conducting a separate trial as to the accounting and attorney's fees because there were no pleadings to support it and because Campbell waived the accounting and attorney's fees by not presenting evidence thereon during the declaratory judgment trial.

We have examined the transcript and find a prayer for accounting and attorney's fees in Campbell's Second Amended Original Petition. Furthermore, GNC's contention that no separate trial should have been held on the issues of an accounting and attorney's fees is without merit. It would have been a waste of the court's, the jury's, and the attorneys' time to have Campbell put on testimony about the need for an accounting or the amount of attorney's fees if he were not successful in his declaratory judgment claim. The court had discretion in ordering a separate trial on

these issues, and we find no abuse. *Fisher v. Howard,* 389 S.W.2d 482, 488 (Tex.Civ. App.—Dallas 1965, no writ). We overrule points of error four and five.

In its sixth point of error, GNC contends that the court erred in excluding its full accounting of income and expenses from leases other than the Federal coal lease. The court's order specifically limited the accounting to income and expenses from the Federal coal lease as that was the only lease in dispute. We find no error and overrule point of error six.

## Attorney's Fees

In its seventh, eighth, ninth, and tenth points, GNC contends that the court erred in rendering judgment for attorney's fees because, in the first trial, there was no evidence submitted, no jury issue supporting attorney's fees, and no pleadings to support the issue. Because we hold that the trial court did not abuse its discretion in having a second trial on the issue of attorney's fees, and because we hold, after examining the record, that there are sufficient pleadings and ample evidence to support the award, we overrule points of error seven, eight, nine and ten.

In its final three points, GNC contends that the court erred: (1) in allowing $30,000 attorney's fees related to the first trial when Campbell did not put on evidence of fees at that trial; (2) in allowing $2,500 for appellate work connected with the first trial for the same reason; and (3) in allowing any attorney's fees because they were waived in the first trial. GNC has neither a statement nor argument and authorities under these points in its brief. Thus, these points are waived. *Arrechea v. Arrechea,* 609 S.W.2d 852, 855 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). We overrule points of error eleven, twelve, and thirteen.

## Burden of Proof in Accounting Trial

In two cross points, Campbell contends that the court erred in the accounting trial in failing to place the burden of proof on

GNC to show that it was entitled to credit for its charge regarding the rental of equipment. At the accounting trial, GNC did not attempt to prove the rental value of the equipment or that the rental charge was a reasonable and necessary expense of the joint venture.

 While Campbell's cross points raise an issue of first impression in Texas, there are analogous cases supporting its contention that GNC—as the party required to file an accounting—had the burden to prove the credit it claimed. It is well recognized that a defendant must prove any payments made which would reduce the amount of an unpaid balance alleged to be due. *See Southwestern Fire & Casualty Company v. LaRue*, 367 S.W.2d 162, 163 (Tex.1963); *Twin City Bowling Lanes, Inc. v. C.I.T. Corporation*, 376 S.W.2d 94, 96 (Tex.Civ.App.—Fort Worth 1964, no writ). Campbell correctly argues that the rental charge GNC deducted from profits is essentially a payment by the joint venture that reduces Campbell's share of the profits. Thus, Campbell contends that the burden was on GNC to prove its entitlement to the credit.

In other jurisdictions, courts have placed the burden of proof in accounting lawsuits on the accounting partner to prove all items of the accounting, including credits. *Gerber v. Buehler*, 194 Kan. 10, 397 P.2d 352 (1964); *Wilson v. Moline*, 229 Minn. 164, 38 N.W.2d 201 (1949). We are persuaded by Campbell's argument and the authority from our sister states. Because Campbell and GNC were partners and in a fiduciary relationship, and because GNC was ordered to file an accounting, we hold that the burden of proof was on GNC as the accounting partner to prove every item of the accounting. GNC failed to do this, and the court should have awarded an additional 15% or $42,000 to the judgment. We sustain Campbell's two cross points, reverse that portion of the judgment pertaining to damages, and render judgment for Campbell in the amount of $571,361.80.

The judgment below is affirmed in part and reversed and rendered in part.

Costs taxed against GNC.