**Affirmed and Memorandum Opinion filed November 17, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00202-CV

---

### GEORGE FLEMING AND FLEMING & ASSOCIATES, LLP, Appellants and Cross-Appellees

### V.

### THE KIRKLIN LAW FIRM, P.C., CHARLES KIRKLIN, AND STEPHEN KIRKLIN, Appellees and Cross-Appellants

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2008-02102**

---

## M E M O R A N D U M   O P I N I O N

This case concerns agreements to refer Fen-Phen cases to Fleming & Associates, L.L.P. (the Fleming Firm) in exchange for a fee and the Fleming Firm's payment of certain expenses. Appellees/cross-appellants The Kirklin Law Firm, P.C., Charles Kirklin, and Stephen Kirklin (collectively the Kirklins) sued appellants/cross-appellees the Fleming Firm and George Fleming, alleging that the

Fleming parties breached the agreements and committed fraud by deducting a share of other expenses from the Kirklins' referral fees. After granting a directed verdict against the Kirklins' fraud claim, the trial court submitted the Kirklins' claims for breach of contract against the Fleming Firm to the jury, which returned a verdict in favor of the Kirklins. The trial court signed a judgment on the verdict, and both sides appealed.

In its appeal, the Fleming Firm initially asserts that the trial court erred when it determined that the referral agreements underlying the Kirklins' lawsuit were ambiguous. The Fleming Firm goes on to argue that because the referral agreements are not ambiguous, parol evidence should not have been admitted , and once that evidence is disregarded, the evidence is legally insufficient to support the final judgment. Because the referral agreements are susceptible of more than one reasonable interpretation, we conclude that the trial court did not err when it held them ambiguous. Further, because the referral agreements are ambiguous, the trial court did not abuse its discretion when it admitted parol evidence to prove the parties' intent. Finally, because we have determined that parol evidence was admissible, we need not reach the Fleming Firm's sufficiency challenge.

In their cross-appeal, the Kirklins argue that the trial court erred when it refused to hold Fleming individually liable for the Fleming Firm's contractual obligations. We disagree because the Kirklins failed to establish, as a matter of law, that the Fleming Firm did not meet the statutory requirements to qualify as a limited liability partnership. The Kirklins also assert that the trial court erred in refusing to include an award of attorneys' fees in the final judgment. Under this Court's precedent, however, section 38.001 of the Civil Practices and Remedies Code does not authorize an award of attorneys' fees against a limited liability partnership. We therefore affirm the trial court's judgment.

2

In the mid-1990s, American Home Products (now known as Wyeth, and referred to by that name) began selling a weight-loss drug known as Fen-Phen. The Food and Drug Administration eventually ordered a mandatory recall of Fen-Phen as a result of the drug being linked to serious and often fatal medical side-effects. Thousands of Fen-Phen users filed suit against Wyeth in the first phase of Fen-Phen litigation. The Fleming Firm settled several hundred cases on behalf of plaintiffs it represented during that first phase.

Soon after the first phase of Fen-Phen litigation ended, the Fleming Firm decided to seek out more Fen-Phen clients. During the second phase of Fen-Phen litigation, the Fleming Firm sought additional Fen-Phen clients through referrals from other attorneys. George Fleming, the managing partner of the Fleming Firm, authorized Jim Doyle, an attorney employed by the Fleming Firm, to negotiate referral agreements with attorneys interested in referring their Fen-Phen clients.

The Kirklins were among the attorneys interested in referring Fen-Phen clients to the Fleming Firm. At first, they referred a small number of clients to the Fleming Firm in cooperation with another attorney, Mike Pohl, who had reached a referral agreement with the Fleming Firm in May 2001. Prior to these referrals, Stephen and Charles Kirklin went to the Fleming Firm's office, where they met with Doyle and discussed how the referrals would work.

The Kirklins later decided to stop working with Pohl and instead refer additional Fen-Phen clients to the Fleming Firm directly. The Kirklins prepared a proposed agreement to document the referral deal and went a second time to the Fleming Firm's office. The Kirklins' proposed agreement resembled the Pohl agreement signed in May 2001. During the October 2001 meeting, the Kirklins presented Doyle with the proposed referral agreement. They also discussed the

terms again with Doyle.  According to Stephen Kirklin, they "wanted to confirm – make sure everybody was straight on exactly what was going to happen, how this was going to work."  After discussing every clause with Doyle, both sides "were in full agreement."  Both Stephen Kirklin and Doyle signed the proposed agreement during the second meeting.[1]

The October referral agreement provides, in its entirety:

> The purpose of this letter is to confirm our new agreement regarding the joint prosecution of Fen-Phen claims.  As agreed, we will refer the Fen-Phen clients that we have to the Fleming law firm in exchange for a forty percent (40%) referral fee and the Fleming firm's payment of the cost of echocardiograms.  The Fleming firm will have the right to accept or reject any tendered cases and will have the right to select the medical personnel to perform echocardiograms.

After signing the October referral agreement, the Kirklins referred about 500 Fen-Phen clients to the Fleming Firm.  The Fleming Firm then prosecuted its Fen-Phen cases for five years until Wyeth agreed to pay an aggregate of $339 million to settle all of the Fleming Firm's approximately 8,000 cases.  Wyeth began funding the settlements and the Fleming Firm began distributing funds to the clients.  The Fleming Firm also began distributing attorneys' fees to the referring attorneys, including the Kirklins.  The Fleming Firm paid the Kirklins over $2 million as their net share of attorneys' fees.

Soon thereafter the Kirklins contested the amount of attorneys' fees they had received under the May and October referral agreements.  The Kirklins alleged that the Fleming Firm calculated the payments incorrectly and the payments were significantly less than required by the terms of the referral agreements.  The

---

[1] The two referral agreements are nearly identical.  On appeal, the parties focus on the language of the October referral agreement but include both the October and May agreements within their arguments.  We follow the parties' lead and address the agreements together while focusing on the specific language found in the October referral agreement.

4

dispute arose out of the Fleming Firm's handling of litigation expenses it incurred prosecuting the second-phase Fen-Phen cases. The Fleming Firm based its calculation of attorneys' fees owed to the Kirklins on its belief that the referral agreements created a joint venture and the Kirklins were therefore responsible for a portion of all litigation expenses incurred during the second phase of Fen-Phen litigation. The Kirklins, on the other hand, argued that the Fleming Firm was responsible for paying not only the echocardiogram expenses but also for all litigation expenses incurred after the clients had been referred to, and accepted by, the Fleming Firm.

When efforts to resolve the dispute failed, the Kirklins filed suit, alleging causes of action against the Fleming Firm and Fleming for breach of contract and fraud. The Kirklins also sought to hold Fleming individually liable for the Fleming Firm's contractual debt. During the ensuing litigation, the trial court denied the parties' cross-motions for summary judgment on breach of contract, ruling that the October referral agreement was ambiguous. The trial judge who made that ruling later recused himself, and the case was transferred to the 164th Judicial District Court. The Kirklins filed another motion for summary judgment on breach of contract, to which the Fleming parties responded by taking the position that the referral agreements were ambiguous. The new trial judge declined to revisit the ruling that the referral agreements were ambiguous. As a result, parol evidence concerning the parties' intentions was admitted during the trial.

Three witnesses testified during the trial: (1) Stephen Kirklin, (2) Jim Doyle, and (3) George Fleming. Stephen Kirklin testified that during their initial meeting at the Fleming Firm, Doyle told them: "you guys go and find the clients. You're going to have to expend everything necessary to find the clients. We're not going to pay your expenses . . . to find these clients." Doyle explained that the Kirklins

5

should also get proof that a client took Fen-Phen and get an echocardiogram to see whether the client had been injured, but that the Fleming Firm would "pay for that" echocardiogram. According to Kirklin, Doyle told them that once the Kirklins brought the Fleming Firm an injured client's case, the Fleming Firm would "do everything necessary to handle the case, take care of any litigation, and we will pay any expenses that we incur from that point forward, until the conclusion of the case."

Doyle testified that he signed the October referral agreement on behalf of the Fleming Firm while still employed at the firm. Doyle agreed almost entirely with Kirklin's account of the conversations leading up to the signing of the October referral agreement. Doyle testified that he believed the Fleming Firm had assumed the contractual responsibility to pay all costs and expenses starting at the point when the Kirklins referred a Fen-Phen client to the Fleming Firm. Doyle admitted that the October referral agreement did not speak expressly about the Fleming Firm's payment of any expenses other than echocardiograms, but testified that he and the Kirklins had discussed that issue before he signed the agreement.

Doyle also testified about a Fleming Firm meeting that occurred around the time Wyeth agreed to settle the firm's second-phase Fen-Phen cases. According to the minutes of that meeting, Fleming "said that he would discuss expense splits with the referring attorneys and allow them to experience the price of litigating with 60 million in expenses." Doyle admitted that Fleming later terminated him, and Doyle testified that Fleming did so because Doyle would not go along with Fleming's decision to charge litigation expenses to the referring firms.

Fleming was the final witness. He testified that Doyle was authorized to make the agreement with the Kirklins. Fleming admitted that he was not present during the meetings between Doyle and the Kirklins and therefore could not testify

6

about the discussions that occurred during those meetings. According to Fleming, he received the October referral agreement after it was signed and he read it at that point. Fleming testified that the referral agreement speaks for itself. When asked if the October referral agreement obligated the Fleming Firm to pay the Kirklins a 40-percent referral fee, Fleming responded that was what the agreement said.

At the conclusion of the Kirklins' case, the trial court granted the Fleming Firm's motion for directed verdict on the Kirklins' fraud claim. The Fleming Firm then rested and the case was submitted to the jury. The jury found that the Fleming Firm had failed to comply with the October referral agreement and determined that the Kirklins' damages were $633,000. The jury also found that the Fleming Firm failed to comply with the May referral agreement, resulting in damages of $27,000. The jury was asked whether the Fleming Firm and the Kirklins formed a joint venture, and it failed to find a joint venture. Finally, the jury awarded the Kirklins attorneys' fees of $150,000 for trial and $75,000 in the event of an appeal.

The court signed a judgment in favor of the Kirklins based on the jury's verdict. The judgment did not hold Fleming individually liable for the contract debt. The trial court later signed a modified final judgment deleting the award of attorneys' fees because section 38.001 of the Civil Practice and Remedies Code makes fees available only when the defendant is an "individual or corporation," not when it is a limited liability partnership. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

## ANALYSIS

Both sides have appealed the judgment. We address the Fleming Firm's issues first and then turn to the issues raised by the Kirklins in their cross-appeal.

### The Fleming Firm's Issues

7

**I.    The trial court did not err when it determined that the referral agreements were ambiguous and admitted parol evidence.**

The Fleming Firm raises two issues on appeal, which we address together.  It argues that the trial court erred when it determined that the referral agreements were ambiguous and then admitted parol evidence of intent during the trial based on that decision.  The Fleming Firm goes on to assert that when the improperly admitted parol evidence is disregarded, the evidence is legally insufficient to support the full amount awarded in the modified final judgment.[2]

**A.    Standard of review and contract interpretation**

Whether a contract is ambiguous is a question of law for the court to decide by examining the agreement as a whole in light of the circumstances present when the contract was entered.  *Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase Bank, N.A.*, 468 S.W.3d 200, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)).   A court may conclude that a contract is ambiguous even though the parties did not plead ambiguity or argue on appeal that it is ambiguous.  *See id.* (citing *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993); *see also Phil Watkins, P.C. v. The Krist Law Firm*, No. 14-02-00291-CV, 2003 WL 21786173, at *3 (Tex. App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem. op.) (stating that agreement between parties that contract at issue was not ambiguous does not prevent appellate court from concluding that it is ambiguous).

A contract is unambiguous if it can be given one certain or definite legal interpretation.  *Lane-Valente Indus. (Nat'l), Inc.*, 468 S.W.3d at 205 (citing *Coker*, 650 S.W.2d at 393).  A contract is ambiguous if it is susceptible of more than one

---

[2] The Fleming Firm concedes on appeal that it owes the Kirklins $100,000 for unreimbursed echocardiogram charges.

8

reasonable interpretation. *Id.* (citing *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI*, 907 S.W.2d 517, 520 (Tex. 1995)). The fact that the parties disagree about a contract's meaning does not necessarily show that it is ambiguous. *Id.* (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000)). In addition, parol evidence is not admissible for the purpose of creating an ambiguity. *Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 592 n. 2 (Tex. 1996)). A court need not, however, embrace strained rules of construction that would avoid ambiguity at all costs. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). Once a court determines that a contract is ambiguous, the parties' interpretations and extraneous evidence are admissible to enable the factfinder to determine the true meaning of the contract. *Id.*

**B.    The referral agreements are ambiguous and parol evidence was admissible to prove the parties' intent.**

The Fleming Firm's argument that the referral agreements are unambiguous begins with the first sentence of each: "[t]he purpose of this letter is to confirm our new agreement regarding the joint prosecution of Fen-Phen claims." The Fleming Firm then points out: (1) the phrase obligating it to pay the cost of the referred clients' echocardiograms; (2) the fact that no other litigation expenses are specifically apportioned by the referral agreements to the Fleming Firm; and (3) the lack of any language expressly excusing the Kirklins from paying litigation expenses other than the cost of the echocardiograms. In the Fleming Firm's view, the referral agreements created a joint venture wherein the only expense falling exclusively on the Fleming Firm was the cost of the echocardiograms. All other litigation expenses incurred in the case were a joint-venture burden to be shared proportionately by all participating law firms, including the Kirklins.

The Kirklins also contend that the referral agreements are not ambiguous. Their interpretation varies dramatically from that of the Fleming Firm, however. The Kirklins assert that the referral agreements are unambiguous because they: (1) specifically obligated the Fleming Firm to pay a forty percent referral fee with no mention of any deductions from that amount; and (2) did not specifically obligate the Kirklins to pay or reimburse the Fleming Firm for anything. The Kirklins also contend that the first sentence of the referral agreements is a recital with no operative effect that should, in essence, be disregarded when construing the referral agreements.

We turn to the Kirklins' last contention first. A contract recital is a preliminary statement explaining the background of the transaction or the reasons for entering into the contract.[3] Recitals generally are not part of a contract unless the parties intend them to be, and they will not control a contract's operative clauses unless those clauses are ambiguous. *All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009, no pet.). Recitals may be considered, however, in determining the proper construction of a contract and the parties' intent. *Id.* We need not decide whether the first sentence of each referral agreement is a recital because even if it is, we may consider that sentence in construing the referral agreements and should, if at all possible, reconcile it with the operative clauses and give it effect. *Id.*

Examining the complete text of the referral agreements, we conclude that they are ambiguous because, when viewed from a utilitarian standpoint and bearing in mind the particular business activity sought to be served, their meaning

---

[3] *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.); *see also McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (stating that a recital is a formal statement or setting forth of some matter of fact that explains the reasons behind the contract or writing).

is uncertain and each side's proposed construction is reasonable. Although a reference to joint prosecution alone could imply sharing of expenses in some fashion, the Kirklins' forty percent contingent fee mentions no deductions.[4] In addition, joint prosecution is not an unambiguous indication that the parties agreed to share expenses because it leaves many questions necessary to calculate the Kirklins' fee unanswered, including what percentage of expenses would be borne by each party, whether any shared expenses would be limited to a particular time frame (e.g., pre- or post-referral), how client-chargeable versus non-chargeable expenses would be treated, and how expenses that also benefitted clients not referred by the Kirklins would be apportioned. Finally, the agreement's specific provision that the Fleming Firm will pay the echocardiogram costs (which were incurred by the Kirklins) leaves the agreement's silence regarding other expenses ambiguous as to whether those expenses would be shared or borne by the firm incurring them. We therefore hold the trial court did not err when it concluded that the referral agreements are ambiguous. *See generally Phil Watkins, P.C.*, 2003 WL 21786173, at *5 (concluding agreement between two law firms dividing contingent fee was ambiguous); *A.W. Wright & Assoc., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466, 470 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding referral contracts between two law firms ambiguous because meaning of phrase "day-to-day handling" was uncertain); *Great Nat'l*

---

[4] We note that the 2001 referral agreements' reference to joint prosecution could have been intended to satisfy the disciplinary rule regarding fee division in effect at the time, which was silent regarding the division of expenses. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f), *reprinted in* 777-778 S.W.2d (Texas Cases) xxxi, xlv (adopted Oct. 17, 1989, effective Jan. 1, 1990, superseded 2005) (providing that one type of "agreement for division of a fee between lawyers who are not in the same firm" that may be made is an agreement in which "the division is . . . made, by written agreement with the client, with a lawyer who assumes *joint responsibility* for the representation . . . ." (emphasis added)). Whether client-chargeable expenses are deducted before or after a contingent fee is calculated must be stated in the agreement between the lawyer and the client. *See id.* R. 1.04(d). Those agreements are not in our record.

11

*Corp. v. Campbell*, 687 S.W.2d 450, 452 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (concluding joint venture agreement was ambiguous due to use of word "including"); *Gibson v. Bentley*, 605 S.W.2d 337, 338–39 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (holding condition in contract triggering provision for sharing amounts to be recovered in lawsuit was susceptible of two irreconcilable interpretations and was ambiguous).

Once a contract is determined to be ambiguous, parol evidence is admissible to establish the parties' intent. *Lenape Res. Corp.*, 925 S.W.2d at 574. Because the referral agreements are ambiguous, we hold that the trial court did not abuse its discretion when it admitted parol evidence during the ensuing trial. *See id.* We need not address the Fleming Firm's legal sufficiency challenge because it is based entirely on the premise that the referral agreements are unambiguous and that parol evidence was thus not admissible during trial. We therefore overrule the Fleming Firm's issues on appeal.

## The Kirklins' Issues on Appeal

**II.     The trial court did not err when it refused to hold Fleming individually liable in the Modified Final Judgment.**

In the second issue of their cross-appeal, the Kirklins argue that the trial court erred when it refused to hold Fleming individually liable for the Fleming Firm's contractual obligations.[5] According to the Kirklins, Fleming should be individually liable for the contract debt because the Fleming Firm failed to comply with the Texas Revised Partnership Act's (TRPA) requirements for maintaining its status as a limited liability partnership. *See* Act of May 31, 1993, 73rd Leg., R.S.,

---

[5] The Kirklins' first issue challenged the trial court's directed verdict on their fraud claim. During oral argument, the Kirklins waived consideration of this issue in the event we affirmed the judgment against the Fleming Firm on a breach-of-contract theory. Because we affirm the judgment on that theory, we do not address the Kirklins' fraud issue. *See* Tex. R. App. P. 47.1.

12

ch. 917, § 1, sec. 3.08, 1993 Tex. Gen. Laws 3887, 3894 (expired Jan. 1, 2010). Fleming responds that: (1) TRPA does not apply; and (2) even if it does, the Fleming Firm met all statutory requirements to qualify as a limited liability partnership, thereby precluding his individual liability.

Assuming without deciding that TRPA applies to this dispute,[6] it requires partners seeking the protection afforded by a limited liability partnership to meet specified requirements, including establishing financial responsibility. *See id.* The statute provides alternative methods of establishing financial responsibility, including carrying at least $100,000 of liability insurance, or maintaining $100,000 of funds specifically designated and segregated for the satisfaction of judgments against the partnership through a bank letter of credit. *Id.* Although the statute provides that the burden of proving compliance with the statute is on the person seeking the protection of limited liability, individual partner liability is not automatically imposed once a limited liability partnership is found liable for a contract debt. *See id.* (placing burden of proof on person seeking limitation of liability); *see also Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 429 (Tex. 2015) (stating that judgment against partnership is not by itself a judgment against partner); *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 64 (Tex. 2008) (stating that judgment against limited partnership is not automatically a

---

[6] TRPA expired January 1, 2010. *See Ingram v. Deere*, 288 S.W.3d 886, 894 n. 4 (Tex. 2009) (noting statutes governing Texas partnerships). On January 1, 2006, the Texas Business Organizations Code replaced TRPA. *Id.* The parties dispute which law controls this long-running litigation. *Compare* Tex. Bus. Orgs. Code Ann. § 402.006 (West 2012) ("The prior law governs the acts, contracts, or transactions of the entity or its managerial officials, owners, or members that occur before the mandatory application date [of January 1, 2010].") *with Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982) (stating that if a statute is repealed or amended without a savings clause for pending suits, the repeal is given immediate effect).

judgment against the general partner).[7]

The trial court separated the question of Fleming's individual liability from the initial question whether the Fleming Firm breached the referral agreements.[8] After the jury returned its verdict in favor of the Kirklins, the Kirklins filed a motion seeking a determination of whether the Fleming Firm had complied with the financial responsibility provisions of the TRPA.

Fleming and the Fleming Firm filed a response in which they argued that Fleming was not individually liable because the Fleming Firm had always complied with the financial responsibility requirements set forth in the TRPA. In an affidavit attached to the response, Fleming testified that since its formation in 1999, the Fleming Firm: (1) "had carried general liability insurance with policy limits of between $1,000,000 and $2,000,000;" and (2) "had access to a multimillion dollar line of credit. . . ." Fleming also included in the response a request for a jury trial to resolve any fact issues related to the Fleming Firm's compliance with the financial responsibility requirements set forth in the TRPA. The Kirklins did not file any evidence disputing Fleming's affidavit. The Kirklins also did not file a motion for summary judgment,[9] nor was there a jury trial on the

---

[7] Article 6132b-3.08(d)(3) of TRPA provides:

If compliance with Subdivision (1) is disputed:

(A)    compliance must be determined separately from the trial or proceeding to determine the partnership debt or obligation in question, its amount, or partner liability for the debt or obligation; and

(B)    the burden of proof of compliance is on the person claiming limitation of liability under Subsection (a)(2).

Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, sec. 3.08(d)(3), 1993 Tex. Gen. Laws 3887, 3896 (expired Jan. 1, 2010).

[8] The Kirklins do not complain about this ruling on appeal.

[9] The Kirklins assert in their cross-appellant's brief that their motion was actually a no-evidence motion for summary judgment on their cause of action seeking a declaratory judgment

14

issue of Fleming's individual liability. The trial court's modified final judgment ultimately did not hold Fleming individually liable.

We conclude that Fleming and the Fleming Firm presented evidence conclusively demonstrating compliance with TRPA's financial responsibility provisions. Faced with Fleming's evidence of compliance, the burden passed to the Kirklins to either (1) file a motion for summary judgment seeking to prove as a matter of law that the Fleming Firm failed to comply with the financial responsibility requirements of the limited liability partnership statute; or (2) submit the issue to a jury for resolution. *See Evanston Ins. Co. v. Dillard Dept. Stores, Inc.*, 602 F.3d 610, 612 (5th Cir. 2010) (resolving issue of individual liability of former partners in dissolved limited liability partnership through a motion for summary judgment); *see also Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642–43 (Tex. 2013) (stating that burden shifted to plaintiff to establish an exception once

on Fleming's individual liability. Even if we assume that the Kirklins sought a declaratory judgment on the issue of Fleming's individual liability, we disagree that their motion was a no-evidence motion for summary judgment. First, the motion was not identified as a no-evidence motion for summary judgment in its title or in the notice of hearing. *See Grimes v. Reynolds*, 252 S.W.3d 554, 558 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that a motion that does not clearly state that it is a motion for no-evidence summary judgment does not give the nonmovant notice that the movant is seeking a no-evidence motion for summary judgment); *Lesikar v. Moon*, 237 S.W.3d 361, 369 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (stating that Rule 166a's notice requirements must be strictly construed). Second, the Kirklins' motion did not specifically state the elements on which Fleming had the burden of proof and as to which there was no evidence. *See Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 288 (Tex. App.—Dallas 2013, pet denied) ("A motion for no-evidence summary judgment that does not specify the element or elements that are being challenged does not provide any ground upon which the trial court can grant summary judgment."); *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 147 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A motion for no-evidence summary judgment must specifically 'state the elements as to which there is no evidence,' there may be no 'conclusory motions or general no-evidence challenges to an opponent's case.'"). This requirement to state the elements was particularly important here, because although Fleming would have the burden of proving compliance with TRPA, the Kirklins had the burden to prove any other elements necessary to obtain affirmative relief against Fleming in the form of a declaratory judgment. *See Russell v. City of Bryan*, 919 S.W.2d 698, 704 (Tex. App.—Houston [14th Dist.] 1996, writ denied). The Kirklins could not establish those elements through a no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a(i).

15

defendant conclusively established statute of frauds affirmative defense). The Kirklins did neither and therefore waived the issue of Fleming's individual liability for the contract debt. *See* Tex. R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or defense not conclusively established under the evidence and no element of which is submitted or requested are waived."); *Dynegy, Inc.*, 422 S.W.3d at 643 (holding plaintiff's failure to secure favorable findings on exception to statute of frauds affirmative defense constituted waiver of the issue under Rule 279); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995) ("If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury."); *Lane-Valente Indus. (Nat'l), Inc.*, 468 S.W.3d at 204 (observing that a party has a right to submit contested fact issues to a jury for resolution).[10] We overrule the Kirklins' second issue of their cross-appeal.

## III. This Court's precedent precludes the Kirklins from recovering attorneys' fees from the Fleming Firm.

In their fourth issue, the Kirklins assert that the trial court erred when it refused to award their attorneys' fees against the Fleming Firm, a limited liability partnership.[11] This Court has held that section 38.001 of the Civil Practices and

---

[10] The Kirklins cite two cases in support of their argument that the Fleming Firm failed to comply with the financial responsibility provisions of TRPA. We conclude that neither case supports their position. In *Edward B. Elmer, M.D., P.A. v. Santa Fe Prop., Inc.*, No. 04-05-00821-CV, 2006 WL 3612359, at *2 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) (mem. op.), the court of appeals held that the defendant was not a properly registered limited liability partnership because there was no evidence that the partnership, rather than the individual doctor, had any form of insurance or other form of financial responsibility designated in the statute. Similarly, in *Apcar Inv. Partners VI, Ltd. v. Gaus*, 161 S.W.3d 137, 140–42 (Tex. App.—Eastland 2005, no pet.), the court held that the partnership was not a properly registered limited liability partnership because the liability at issue arose after the partnership's registration expired and was not renewed. Neither of those situations is present here.

[11] In their third issue, the Kirklins argue that the trial court erred when it did not order Fleming to pay their attorneys' fees. We overrule this issue because we have affirmed the trial

Remedies Code does not authorize an award of attorneys' fees against a limited liability partnership. *Fleming & Assoc., L.L.P. v. Barton*, 425 S.W.3d 560, 576 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). As the Fleming Firm is a limited liability partnership, and section 38.001 of the Civil Practice and Remedies Code is the only basis upon which the Kirklins sought attorneys' fees, we hold that the trial court did not err when it refused to award the Kirklins' attorneys' fees against the Fleming Firm. *Id.* We overrule the Kirklins' fourth issue on appeal.

## CONCLUSION

Having overruled the issues raised by the Fleming Firm and by the Kirklins, we affirm the trial court's judgment.


/s/     J. Brett Busby
        Justice


Panel consists of Justices Jamison, Busby, and Brown.

---

court's refusal to hold Fleming individually liable for breach of contract. *See MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009) ("To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages.").